STATE v. M. H. POTTER, JR.

(Filed 25 March, 1942.)

**1. Criminal Law § 9—**

An accessory after the fact is one who, after a felony has been committed, with knowledge that the felony has been committed, renders personal assistance to the felon in any manner to aid him to escape arrest or punishment, knowing at the time the person so aided has committed a felony. C. S., 4177.

**2. Same—**

The facts and circumstances adduced by the evidence in this case, construed in the light most favorable to the State, *are held* sufficient as to each essential element to sustain the conviction of appealing defendant as an accessory after the fact to the felony committed by the principal felon, the indictment and evidence against the principal felon being sufficient to sustain conviction of him of secret assault, C. S., 4213, and of assault resulting in serious injury, C. S., 4214.

APPEAL by defendant from *Nimocks, J.,* at December Term, 1941, of GREENE.

Criminal prosecution upon indictment charging defendant with being accessory after the fact to a malicious assault with a deadly weapon secretly committed by one Henry Ward with intent to kill, and resulting in serious injury.

The bill of indictment, deleting formalities, charges "that Henry Ward . . . on 14th July, 1941 . . . unlawfully, wilfully and feloniously, premeditatedly, deliberately and with malice aforethought did in and upon one Claude Sullivan, with a certain deadly weapon, to wit, a knife, secretly make an assault with intent to kill, and him, the said Claude Sullivan, unlawfully, wilfully, feloniously, premeditatedly, deliberately and with malice aforethought did stab, cut, wound and seriously injure in his back, . . ." and further charges "that on said day . . . M. H. Potter . . . well knowing the said Henry Ward to have done and committed the said felonious assault and felony in manner and form aforesaid . . . then and there, afterwards . . . unlawfully,

STATE *v.* POTTER.

wilfully, feloniously, premeditatedly, deliberately and with malice afore-thought, did him, the said Henry Ward, then and there receive, harbor, maintain, comfort, assist and transport away from the scene of the felony, for the purpose of enabling the said Henry Ward, avoid appre-hensions. . . ."

Upon the call of the case in the Superior Court Henry Ward tendered a plea of guilty to secret assault with intent to kill. The defendant pleaded not guilty.

The State offered evidence tending to show in brief this narrative: On the morning of 14 July, 1941, about 5 o'clock, Claude Sullivan approached M. H. Potter, who was sitting in his car on street of Snow Hill, and after Potter had gotten out of his car and walked with Sulli-van a short distance down the street they engaged in an argument about a horse and a mule. They agreed to go before the chief of police and have it settled. Thereupon they entered Potter's car, he on the left under the steering wheel, away from the sidewalk, and Sullivan on the right next to the sidewalk. Though Potter started his motor, they sat there in the car and talked for several minutes. Then "all of a sudden" Potter said to Sullivan "Get out of my car," and he did so, and appeared to turn in direction of his car parked near-by. As he did, Potter said, "I have got your team, and there ain't nothing you can do about it." Whereupon Sullivan turned and came back to the car, opened the door of it, and, leaning over with his head in the car and feet on pavement, reached with his hands as if he were going to pull Potter out. Henry Ward, a Negro employee of Potter, who had come across the street, was standing at the right rear fender of the car with an open knife in his hand. Then, as Sullivan was leaning against or in the car, as narrated by him, Potter's "expression changed and he got as white as a human can get," and "all of a sudden" Henry Ward, without saying anything, and of whose presence he, Sullivan, was unaware, stabbed Sullivan in the back with the knife. Sullivan cried out "he has killed me," or "he has cut me to death," as variously understood by men on the sidewalk near-by, and "went right down, kinder sideways" on both the running board and pavement. Ward raised his hand to strike with the knife a second time, but, upon being warned by some one near-by not to do it, backed off, and dared the near-by men to come toward him, and then, with knife in hand, got into the car with Potter, who drove away—as one witness stated, "the car left there pretty fast."

Around 7 o'clock that morning Potter, with a Negro man in his car, stopped at a filling station at Richland, forty-five miles away from Snow Hill, for service to his car. While there he procured for the Negro a ride to Jacksonville, North Carolina, with one Mr. Holt, who was a policeman of that town.

STATE *v.* POTTER.

About 8 o'clock same morning when sheriff and chief of police went to home of Potter in Snow Hill, his automobile was parked around on cross street in driveway of his uncle. Upon being called out and asked about the Negro he had carried away, Potter denied that he had taken anyone away, denied that he had been out of town except two or three miles to a man to do some work for him, denied that Sullivan had been cut, and denied that he knew the name of the Negro who had cut Sullivan. But after being arrested and taken to the sheriff's office and there, after continuing his denials for an hour or more, he phoned for a bondsman and in talking over phone stated that he had been arrested because one of "his niggers," Henry Ward, had cut somebody, or stabbed a man, as differently expressed by witnesses. After this he admitted that Ward worked for him around his stables, that he had taken him around the corner to a truck and that just before he took him away he heard Sullivan say that he had been cut.

Later in the morning, around 11:30 o'clock, a patrolman arrested Ward while working at the stables of Potter at Marine base near Jacksonville.

Defendant offered no evidence.

Verdict: Guilty.

In entering judgment the court below found as a fact that the person assaulted, Claude Sullivan, was dangerously and seriously wounded as result of being stabbed with a knife by the defendant, Henry Ward, and proceeded to sentence both Henry Ward and the defendant Potter.

Judgment as to Potter: Confinement in the State's Prison at hard labor for not less than three, nor more than, five years.

Defendant Potter appeals to Supreme Court, and assigns error.

*Attorney General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*J. A. Jones and K. A. Pittman for defendant, appellant.*

WINBORNE, J. One question of law is presented on this appeal: Considered in the light most favorable to the State is the evidence shown in the record sufficient to take the case to the jury on the offense charged against defendant M. H. Potter?

We are of opinion, and hold, that it is.

It is provided by statute in this State, C. S., 4177, that if any person shall become an accessory after the fact to any felony, whether the same be a felony at common law or by virtue of any statute made, or to be made, such person shall be guilty of a felony, and may be indicted and convicted together with the principal felon, or for such felony whether the principal shall or shall not have been previously convicted, and punished as therein prescribed.

By the common law an accessory after the fact is one who, knowing that a felony has been committed by another, receives, relieves, comforts, or assists such other, the felon, or in any manner aids him to escape arrest or punishment. The same definition is applicable to modern statutes.

To constitute a person an accessory after the fact these essentials must appeal: (1) The felony must have been committed. (2) The accused must know that the felony has been committed by the person received, relieved or assisted. (3) The accessory must render assistance to the felon personally. 14 Am. Jur., 836-37, Criminal Law, secs. 102 and 103; 22 C. J. S., 165, 166, 167, Criminal Law, secs. 95, 96, 97; Clark & Marshall's Treatise on the Law of Crimes, 4th Ed. by Kearney, at p. 218, sec. 175; Wharton's Criminal Law, Vol. 1, p. 368, secs. 281-282.

It is stated in 14 Am. Jur., 837, Criminal Law, 103, that to be an accessory after the fact one need only aid the criminal to escape arrest and prosecution. It is said that "this rule, however, does not render one an accessory after the fact who, knowing that a crime has been committed, merely fails to give information thereof, nor will the act of a person having knowledge of facts concerning the commission of an offense in falsifying concerning his knowledge ordinarily render him an accessory after the fact. Where, however, the concealment of knowledge of the fact that a crime has been committed, or the giving of false testimony as to the facts is made for the purpose of giving some advantage to the perpetrator of the crime, not on account of fear, and for the fact of the advantage to the accused, the person rendering such aid is an accessory after the fact."

It is stated in 22 C. J. S., 167, Criminal Law, sec. 97, that "to constitute one an accessory after the fact the aid or assistance must have been rendered with the intention, and for the purpose of enabling the felon to escape detection, arrest or the like."

In the present case the bill of indictment is sufficiently comprehensive to charge Henry Ward with commission of a felony under either of two statutes, C. S., 4213, as to secret assault, and C. S., 4214, as to assault resulting in serious injury, and the evidence against him is full enough to support a conviction of him upon charge under either of these statutes.

Hence, applying the above principles of law, pertaining to accessory after the fact, to the case in hand, we are of opinion that the facts and circumstances in evidence pertinent to the charge against defendant Potter are amply sufficient to carry the case to the jury, and to support an adverse finding against him as to each of the essentials constituting the offense of accessory after the fact to the felony committed by Henry Ward.

In the judgment below, we find

No error.