STATE OF NORTH CAROLINA v. LEE ROY MARTIN

No. 7618SC208

(Filed 21 July 1976)

1. Criminal Law § 11— accessory after the fact — elements of crime

To constitute a person an accessory after the fact these essentials must appear: (1) the felony must have been committed; (2) the accused must know that the felony has been committed by the person received, relieved or assisted; (3) the accessory must render assistance to the felon personally. G.S. 14-7.

2. Criminal Law § 11— accessory after the fact — failure of defendant to aid principal felon — crime complete irrespective of success

In a prosecution of defendant for being an accessory after the fact to the felony of manslaughter where the State offered evidence tending to show that the felony of manslaughter had been committed, that defendant knew the slayer had committed the felony, and that defendant undertook to assist the slayer in concealing the crime and avoiding arrest by first planning to dispose of the victim's body and, secondly, preparing a written statement for the slayer's signature which indicated that the gun used in the crime belonged to the

State v. Martin

victim and the victim shot himself, the fact that defendant was unsuccessful in his efforts was immaterial, since, clearly, his design was to help the principal felon evade the law; in like manner defendant's motive in trying to conceal the fact that he, as a convicted felon, was in possession of the pistol did not excuse his actions in endeavoring to assist the principal felon in evading arrest and prosecution.

3. Criminal Law § 11— principal felon guilty of involuntary manslaughter — defendant guilty of accessory after the fact to voluntary manslaughter — no error

The trial court properly denied defendant's motion in arrest of judgment made on the ground that defendant was convicted of the felony of accessory after the fact to voluntary manslaughter but the principal felon was convicted only of involuntary manslaughter, since if defendant was an accessory after the fact to manslaughter, voluntary or involuntary, he would be guilty of a substantive felony under G.S. 14-7.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 19 December 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 June 1976.

Defendant was charged in a bill of indictment with the felony of being an accessory after the fact to the felony of manslaughter.

The State's evidence tends to show the following: On 16 April 1975 defendant, Jeffery Scott, Delbert James Moorefield (the slayer), and John Olin Whitworth (the victim) were riding in defendant's automobile from place to place in Guilford County, drinking beer. Defendant was driving, Scott was in the rear seat on the left, Whitworth (the victim) was in the right front seat, and Moorefield (the slayer) was in the right rear seat immediately behind Whitworth. As they rode along, the four were teasing and "picking at" one another. Whitworth took a pistol from the glove compartment and brandished it about in the car saying, "I have got the gun now." Moorefield grabbed the gun and said, "Who's got the gun now?" The pistol fired, and the projectile struck Whitworth in the left forehead, exited from the right back of his head, and penetrated the right front windshield. Whitworth slumped over in the front seat, apparently dead. The shooting took place between five and five thirty o'clock p.m.

Defendant told Moorefield, "He is dead as Hell, boy, you have killed him." Defendant then told Moorefield and Scott, "Don't panic, that is the worst thing to do. The first thing to

do is get rid of the body." Defendant then proposed that they gas up the car, take the body to Tennessee and dump it somewhere. Defendant told them, "Don't panic, we have got to get rid of the body." When Moorefield and Scott objected to that course of action, defendant told them that the gun was his, that he was a convicted felon, that he was not supposed to have a gun, that he was not going to prison because of something someone else had done, and that he wasn't going to let anybody know he had a gun.

Defendant kept riding and talking. Scott suggested that they take the victim to the hospital, but defendant said, "No, he is sure enough dead." Defendant finally drove to the home of Randal Scott (the brother of defendant's passenger). Defendant said to Randal Scott, "You know I want to take his body and dump it out and if the law should get onto me will you go along with me." Randal Scott told defendant to take the victim to the hospital. On the way to the hospital defendant stopped and purchased a quart bottle of beer, which he drank. On the way to the hospital defendant told Scott and Moorefield that they would report that the victim shot himself and everybody would stick to that story. Defendant told Scott and Moorefield, "Hey, boy, if you crack and get me in trouble, I have got a friend at the prison camp, I will get even with you." Defendant further threatened reprisals against the families of Scott and Moorefield if the police found out anything that happened and "if you tell on me."

Defendant arrived at the hospital at approximately 7:02 p.m., some one and one-half to two hours after the shooting took place. The police asked that defendant, Scott, and Moorefield each write out a statement of what happened. Moorefield told them he could not write and asked defendant to write it for him. Defendant wrote a statement which Moorefield signed. The statement indicated that the gun belonged to the victim and that the victim shot himself. Moorefield first told the officers that he and the victim had purchased the gun, that he did not know the victim had carried the gun with him that day. Later Moorefield told the officers that the gun belonged to defendant and also told them that he had leaned forward, grabbed the gun, and while in his hand, it went off as he was sitting back down in the back seat.

Defendant offered no evidence. The jury found defendant guilty as charged.

*Attorney General Edmisten, by Assistant Attorney General Robert R. Reilly, for the State.*

*Morgan, Byerly, Post, Herring & Keziah, by W. B. Byerly, Jr., for the defendant.*

BROCK, Chief Judge.

Defendant assigns as error the denial of his motion for judgment of nonsuit.

[1]  "At common law, an accessory after the fact is one who, knowing that a felony has been committed by another, receives, relieves, comforts, or assists the felon, or in any manner aids him to escape arrest or punishment." 21 Am. Jur. 2d, Criminal Law, § 126, p. 200. This same definition is applicable to our statute, which reads: "If any person shall become an accessory after the fact to any felony . . . such person shall be guilty of a felony. . . . " G.S. 14-7. "To constitute a person an accessory after the fact these essentials must appear: (1) The felony must have been committed. (2) The accused must know that the felony has been committed by the person received, relieved or assisted. (3) The accessory must render assistance to the felon personally." *State v. Potter,* 221 N.C. 153, 19 S.E. 2d 257 (1942).

[2]  It seems clear in this case that the State offered evidence tending to show (1) that the felony of manslaughter had been committed; (2) that defendant knew that Moorefield had committed the felony; and (3) that defendant undertook to assist Moorefield in concealing the crime and avoiding arrest by first planning to dispose of the victim's body and, secondly, by preparing a written statement for Moorefield's signature, which indicated that the gun belonged to the victim and that the victim shot himself. We think the fact that defendant was unsuccessful in his efforts is immaterial because clearly his design was to help the principal felon evade the law. "It is not necessary that the aid be effective to enable the felon to escape all or a part of his punishment." 22 C.J.S., Criminal Law, § 99, p. 277. In a like manner defendant's motive in trying to conceal the fact that he, as a convicted felon, was in possession of the pistol does not excuse his actions in endeavoring to assist the principal felon in evading arrest and prosecution.

Defendant strenuously argues that a statement made in *State v. Potter, supra,* entitles him to a dismissal of the charges against him because his actions were primarily for the advantage of himself and not for the principal felon. The statement in *Potter* is a quote from American Jurisprudence. It reads as follows: "Where . . . the concealment of knowledge of the fact that a crime has been committed, or the giving of false testimony as to the facts is made for the purpose of giving some advantage to the perpetrator of the crime, *not on account of fear, and for the fact of the advantage to the accused,* the person rendering such aid is an accessory after the fact." (Emphasis added.) 14 Am. Jur., Criminal Law, § 103, p. 837.

There are several reasons why defendant's reliance upon the above quote is ill founded. First, the principle above-quoted is applicable to situations where a person *merely fails to give information* of the committed felony or *denies knowledge* of the committed felony. This is made clear by the sentence in the text which immediately precedes the one quoted. Secondly, *Potter* was not concerned with that type of concealment of knowledge of a felony, and the second two sentences quoted from the American Jurisprudence text were not essential to the disposition of the case before the court. Thirdly, we have researched the source material for the quoted sentence from American Jurisprudence, i.e., *Blakely v. State,* 24 Tex. App. 616, 7 S.W. 233, 5 Am. St. Rep. 912 (1888), and 19 Ann. Cas. 144. The American Jurisprudence text is a direct quote from the annotation in 19 Ann. Cas. 144, which, in turn, cites as its authority *Blakely v. State, supra.* A reading of *Blakely* discloses that it holds that two witnesses to a murder who were coerced by a third witness to the murder to give false information to a magistrate were accomplices of the third witness as an accessory after the fact. In so holding, the court stated: "In agreeing to do so, and in doing so, no matter what the motive, they made themselves accomplices, or *particeps criminis* in the offense which was committed [the felony of accessory after the fact] by their false testimony. If a witness implicates himself, it is immaterial that he claims to have been coerced." *Blakely v. State, supra.* It therefore seems clear that *Blakely* does not support the cited text. Furthermore, the current text of American Jurisprudence has deleted the sentence relied upon by defendant. *See* 21 Am. Jur. 2d, Criminal Law, § 126. Likewise, the text of Corpus Juris Secundum does not support

defendant's argument. *See* 22 C.J.S., Criminal Law, §§ 95-99. And finally, the meaning of the sentence relied on by defendant is unclear and susceptible of various constructions. In our view this argument by defendant is without merit.

[3]　After the verdict of the jury was returned in this case, the principal felon pleaded guilty to the felony of involuntary manslaughter. Defendant moved in arrest of judgment, arguing that defendant was convicted of the felony of accessory after the fact to *voluntary* manslaughter but that the principal felon was convicted only of *involuntary* manslaughter. This argument is not persuasive.

The offense of being an accessory after the fact to a felony is a substantive felony offense. *State v. McIntosh*, 260 N.C. 749, 133 S.E. 2d 652 (1963). Manslaughter, whether voluntary or involuntary, is a felony. *State v. Swinney*, 271 N.C. 130, 155 S.E. 2d 545 (1967). The trial judge explained the elements of both voluntary and involuntary manslaughter, as he should have done, because if defendant was an accessory after the fact to either one, he would be guilty of a substantive felony under G.S. 14-7. The trial judge did not submit an issue of accessory after the fact to involuntary manslaughter as a lesser included offense of the offense charged. He explained the elements of both voluntary and involuntary manslaughter and instructed the jury that if it found that the State had established either crime beyond a reasonable doubt, then the requirement of showing that the crime of manslaughter had been committed would be satisfied. We perceive this to be a correct application of the law. The question of punishment was for determination by the trial judge under G.S. 14-2, as in the case of other felonies for which no specific punishment is prescribed by statute.

We have examined defendant's remaining assignments of error and find them to be without merit. In our opinion defendant had a fair trial free from prejudicial error.

No error.

Judges PARKER and ARNOLD concur.