State v. Earnhardt

No error.

Judges VAUGHN and MARTIN (Harry C.) concur.

STATE OF NORTH CAROLINA v. VICKIE ANN EARNHARDT AND WILLIAM CARL KELLER

No. 8119SC697

(Filed 20 April 1982)

1. **Criminal Law § 157— failure to include proper parts of record—subject to dismissal**

   Where defendant failed to include in the record on appeal copies of either the verdict, judgment, notice of appeal or appeal entry, although the information contained in those documents appeared in the record in various places, defendant's case was technically subject to dismissal.

2. **Criminal Law § 11— accessory after fact of voluntary manslaughter—sufficiency of evidence**

   The evidence was sufficient to survive defendant's motion to dismiss the charge of accessory after the fact of voluntary manslaughter on the ground that the evidence failed to show that defendant knew the offense had been committed, where the evidence tended to show that defendant knew, before proposing a false story to be told to authorities, that decedent and two men had been fighting, that decedent was left very near to or on the road, and that decedent had been struck and killed by an automobile.

3. **Criminal Law § 102.1— closing argument of district attorney—supported by evidence—portion of argument omitted from record**

   The district attorney's characterization in his closing argument that those present at the scene of a crime were "acting like a pack of wolves," did not torture the sense of the record so as to mislead the jury or deprive defendant of a fair trial. Further, a portion of the district attorney's remarks were absent from the record, and when a portion of the argument is omitted from the record, the argument is presumed proper.

4. **Criminal Law § 117.4— instruction regarding State's witness**

   An instruction regarding a State's witness's plea bargain for a reduction of charges in exchange for his testimony did not improperly allow the jury to decide why the witness testified.

5. **Criminal Law § 11— accessory after the fact to voluntary manslaughter—instructions**

   A court's instruction that "for a person to be guilty of a crime in this case, accessory after the fact of voluntary manslaughter, it is not necessary that he

or she do all of the acts necessary to constitute the crime, but he or she must be present," accurately stated the law of concerted action.

**6. Criminal Law § 111.1— use of "they" in charge to jury**

    From the court's use of the pronoun "they" in part of the charge to the jury, it was clear that the trial court was referring to the codefendants, and the instruction did not allow the jury to consider the codefendants' actions against defendant.

**7. Criminal Law § 113.8— accessory after the fact—instruction improper**

    In a prosecution for accessory after the fact to voluntary manslaughter, the court erred in instructing that if defendant knew two men *"could* have committed the crime of voluntary manslaughter" and assisted these men in escaping or attempting to escape detection or arrest, then he should be found guilty since it must have been shown that defendant *knew* a felony had been committed.

    Judge HEDRICK dissenting.

APPEAL by defendant from *Walker, Judge.* Judgment pronounced 19 February 1981 in Superior Court, ROWAN County. Heard in the Court of Appeals 9 December 1981.

Defendant was arraigned on a charge of accessory after the fact of voluntary manslaughter, entered a plea of not guilty, and was tried with a codefendant.

Donald Ray Lagree, testifying pursuant to a plea negotiation, testified that on the night of 29 June 1980, he and Walter Horne, who are black males, and two white women were drinking liquor at the home of defendant. Clarence Basinger, husband of one of the women, came to the front door of the house and told defendant that he wanted to speak to his wife. Linda Basinger went out to the porch but ran back into the house about fifteen minutes later holding the side of her face, crying. She said that her husband had hit her. Codefendant Vickie Earnhardt, Linda's sister, called the Sheriff's Department. Defendant went outside and talked to Clarence Basinger, then returned and said that Basinger was sorry for what he had done and that he wanted to speak to his wife again. Linda Basinger went back outside, accompanied by defendant. Those remaining inside heard a woman's scream, ran outside, and saw that Linda Basinger had been cut on the arm and was bleeding profusely. Lagree and Horne began arguing with Clarence Basinger, and a fight broke out. Basinger had an open hawkbill knife in his hand; Horne had a pocketknife, and

Lagree, a belt. Basinger fell to the ground and was kicked and stomped. He crawled to the road in front of the house and called from the edge of the road that he was going to return with a shotgun. Basinger was still on the ground in a crawling position. Horne then approached Basinger, and they began fighting again. Horne hit Basinger's head on the road, and Basinger was kicked and stomped. Basinger crossed to the other side of the road, where he was left lying, conscious, with his upper body on the roadway. Defendant was standing in the yard of his house during the fight and did nothing.

Horne and Lagree went back into the house. Lagree, Horne and defendant Earnhardt walked out to the road and found Basinger still conscious and moaning. Horne kicked Basinger in the head. The men discussed whether they should move Basinger out of the road, but within moments, two automobiles simultaneously approached from opposite directions and Basinger was struck by a Ford Pinto. The driver, William Beck, stopped and called an ambulance and the Sheriff's Department. Patrick Beck, Beck's younger brother, and Lagree testified that defendant told Horne, Lagree and Earnhardt not to relate everything, but to tell the following story: Clarence Basinger pulled a knife on his wife and tried to cut her, and defendant tried to wrestle the knife away; defendant saw two black men walking up the road and called to them for help; Basinger ran when he saw the men coming and fell down in the road, where he was hit by an automobile. Defendant rehearsed the story with his companions at least three times. Steve Douglas, the investigating deputy sheriff, testified that defendant told him the story when he met defendant to talk about the incident.

Defendant was convicted of being an accessory after the fact of voluntary manslaughter. He appeals from an order of imprisonment.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr., for the state.*

*Davis and Corriher, by Robert M. Davis, for defendant appellant.*

MORRIS, Chief Judge.

[1]　North Carolina Appellate Rule 9(b)(3) stipulates that "the record on appeal in criminal actions shall contain: . . . (vii) copies of the verdict and of the judgment, order, or other determination from which appeal is taken, (viii) a copy of the notice of appeal, or of the appeal entry showing appeal taken orally . . . " Defendant has failed to include copies of either the verdict, judgment, notice of appeal, or appeal entry, although the information contained in those documents does appear in the Record in various places. We call appellant's attention to the requirements of the rule. The rule is a practical one. In addition to insuring that the procedures at trial are presented to the court accurately, it also results in presenting the record to the Court chronologically, without the necessity of the Court's having to search the Record for necessary components. The case is technically subject to dismissal. Because of the severity of the charges against defendant, we have elected to consider the appeal on its merits.

Defendant brings forth three assignments of error. He first contends that the trial court erred in denying his motions to dismiss at the end of the State's evidence and at the end of all the evidence, because, he says, the evidence fails to show that defendant knew Lagree had committed voluntary manslaughter.

[2]　In order to prove a person to be an accessory after the fact, it must be shown (1) that the felony was committed, (2) that the accused knew the felony had been committed by the person assisted, and (3) that the accessory personally rendered assistance to the felon. *State v. Potter*, 221 N.C. 153, 19 S.E. 2d 257 (1942). *State v. Martin*, 30 N.C. App. 166, 226 S.E. 2d 682 (1976). Defendant contends that the evidence fails to show that he knew the offense had been committed, or that he even knew the victim was in the road. On the contrary, the evidence, according to defendant, shows that he thought Basinger was in the ditch on the far side of the road. We hold that there was sufficient evidence to survive defendant's motions. As the state's brief points out, it makes no difference that defendant may not have actually seen the victim in the road before the automobile struck him. Testimony indicated that defendant knew, before proposing the false story to be told the authorities, that Basinger, Horne, and Lagree were fighting, that Basinger was left very near to or on

the road, and that he had been struck and killed by an automobile. The evidence is, therefore, sufficient, when considered in the light most favorable to the state, to satisfy each element of the offense of accessory after the fact. Indeed, it shows that defendant knew a felony had been committed by Horne or Lagree before he concocted the tale, engineered cooperation among those present, and related the story to Deputy Douglas.

[3] Defendant asserts that the trial court erred in allowing the district attorney to state in his closing argument, with reference to those present at defendant's house, that "they were acting like a pack of wolves." We hold, however, that this characterization did not torture the sense of the record so as to mislead the jury or deprive defendant of a fair trial. The evidence presented showed that defendant and four other persons were drinking at defendant's house; that Clarence Basinger cut his wife; that Lagree and Horne, armed with a belt and knife, viciously beat and kicked Basinger in the presence of the others; that the fighting spilled from the front porch to the yard and into the road; and that the victim was left in the road to be struck by an automobile. This evidence supports the argument of the district attorney.

> [W]hen the prosecuting attorney does not go outside of the record and his characterizations of the defendant are supported by the evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument.

*State v. Westbrook,* 279 N.C. 18, 39, 181 S.E. 2d 572, 584 (1971); *sentence vacated,* 408 U.S. 939, 92 S.Ct. 2873, 33 L.Ed. 2d 761 (1972). Moreover, we are unable to determine from the record whether the trial judge abused his discretion in controlling the jury argument as the only portion of the district attorney's remarks set forth in the record on appeal is the sentence which is the subject of Exception No. 3A. When a portion of the argument is omitted from the record, the argument is presumed proper. *State v. Hunt,* 37 N.C. App. 315, 246 S.E. 2d 159 (1978).

[4] Defendant argues by his final assignment of error that the trial court erred in several instances in its charge to the jury. Defendant first asserts that the instruction regarding state's witness Lagree's plea bargain for a reduction of charges in ex-

change for his testimony improperly allowed the jury to decide why the witness testified. There is no merit in this contention. The instruction explicitly reminds the jurors that Lagree was an interested witness testifying in accordance with a plea bargain agreement, and warns them to "examine the testimony with great care and caution in deciding whether to believe him."

Defendant excepts to the court's instruction that a conviction of witness Lagree for voluntary manslaughter could be utilized by the jury to decide whether to believe "other testimony at this trial." Defendant contends that this instruction could have caused the jury to use the fact of conviction to decide whether to believe other witnesses. We hold that this instruction, when read with the instruction on the plea bargain, concerned only Lagree and clearly instructed that his guilty plea could only be considered as it bore on the truthfulness of his testimony.

[5] Defendant also excepts to the court's instruction that "for a person to be guilty of a crime in this case, accessory after the fact to voluntary manslaughter, it is not necessary that he or she do all of the acts necessary to constitute the crime, but he or she must be present." Defendant believes that the state must prove that he did all the acts necessary to constitute the crime. We hold that although the state must prove all the elements of the crime, there is no such requirement regarding "acts" committed by the defendant. The trial judge accurately stated the law of concerted action and properly instructed that each element must be proven. It is clear, when this instruction is read as a whole, that the court explained that it is not necessary that defendant do all the acts himself, but that he can be guilty of the crime by acting in concert with others.

[6] Defendant further excepts to the court's use of the pronoun "they" in part of the charge to the jury. Vickie Earnhardt was also on trial in this matter, and it is clear that the trial court was referring to the codefendants. Defendant argues that the instruction was improper because it allowed the jury to consider Vickie Earnhardt's actions against him and did not specify that defendant must have done the acts constituting the crime. The trial court in its charge stated several times that the jury must treat each case and each defendant separately, however. This exception is, therefore, without merit.

[7]   Defendant's sixth contention with regard to the jury instructions is that defendant must have known that Horne and Lagree had committed a felony, but that the court charged that if defendant, "knowing Horne and Lagree or Horne or Lagree *could* have committed the crime of voluntary manslaughter, assisted Horne or Lagree in escaping or attempting to escape detection, arrest or punishment . . . ," then he should be found guilty. Defendant argues that it must have been shown that he *knew* a felony had been committed. We agree with this contention but hold, because the court had otherwise consistently stated that defendant must have known that homicide had been committed, that the instructions were proper when read as a whole.

Defendant's final contention concerns the court's instructions on acting in concert. The jury was charged and retired but returned with a request for further instruction on the law of concerted action. Defendant reiterates the argument that to be convicted of a crime a defendant must do all of the acts necessary to constitute the crime, but complains that the instruction again indicated that the defendant was not required to do all the acts necessary to constitute the crime, only that he must be present. However,

[i]t is not . . . necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*State v. Joyner*, 297 N.C. 349, 357, 255 S.E. 2d 390, 395 (1979). The instruction was, therefore, correct.

In defendant's trial and the judgment rendered, we find

No error.

Judge MARTIN (Robert M.) concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

Because of the bizarre circumstances giving rise to this case, further elaboration and clarification on several aspects of the whole matter is necessary to an understanding of this appeal and defendant's assignments of error.

The case is entitled *State v. Earnhardt and Keller* with two trial court numbers, 81CRS2038 and 81CRS2039. The record discloses that defendant Keller was indicted for the murder of Clarence Basinger, but he was arraigned on a bill of indictment charging him with accessory after the fact of voluntary manslaughter, number 81CRS2039. The record before us does not disclose what disposition was made in Earnhardt's case, but it is clear that her case is not before us on this appeal. The defendant Keller was found guilty of accessory after the fact of voluntary manslaughter and a judgment imposing a prison sentence of not more than ten nor less than four years was entered on 19 February 1981.

I dissent from the majority's holding that the trial court did not err in denying defendant's "motion to dismiss" made at the close of all the evidence. When all the evidence is considered in the light most favorable to the State, it tends to show the following:

Donald Lagree, the State's principal witness, who under a plea bargain pleaded guilty to voluntary manslaughter, and Walter Horne, black men, were drinking wine and smoking marijuana at Horne's house on the evening of 28 June 1980. Lagree had been drinking scotch and beer all day. At about 9:00 p.m., Linda Basinger and Vickie Earnhardt, white women with two small children, came to Horne's house and said they were having car trouble and requested assistance. Since it was dark, Horne and Lagree had the women's car moved to an area where it could be worked upon under a street light, and then Horne and Lagree switched some spark plug wires around and got the car "running better." As payment, Linda and Vickie bought Horne and Lagree a can of beer and a fifth of Wild Irish Rose wine. Linda then invited the group over to the house of her boyfriend, defendant Keller, to drink some liquor. It was about 11:00 p.m. when the group went to defendant's house located on Castor Road in Rowan County. After they had been drinking whiskey for one to

two hours at defendant's house, Clarence Basinger, Linda's husband, knocked on the door. Defendant Keller answered the door and came back and told Linda that her husband wanted to talk with her. Linda went outside but came back into the house minutes later after having been slapped by her husband. Vickie picked up the phone and said she was calling the Sheriff's Department, and defendant went back outside. Defendant returned and told Linda that her husband was sorry and that he wanted to talk to her again. Linda went back outside and after a few minutes was cut on the arm by a knife wielded by her husband. Lagree and Horne went outside and were verbally threatened and abused by Basinger. A fight broke out among Lagree, Horne, and Basinger. Lagree was wielding a belt; Horne, a pocketknife; and Basinger, a hawkbill knife. The defendant observed the initial blows of this fight. Basinger was knocked to the ground and was kicked and stomped. Basinger "started crawling toward the road," and again verbally threatened Lagree and Horne. A second fight then broke out in which "Walter [Horne] dragged him and he hit his head on the road . . . [,] Walter kicked him . . . [,] [h]e crossed to the left side of the road where he went down again and he was kicked and stomped again as he laid on the road." "Just before the second fight broke out," the defendant "was standing in the yard;" the defendant "didn't do anything as this was going on." After the second fight, Lagree went back to the house. Then Horne, Lagree, and Vickie went out to the road to see how badly Basinger was hurt. Basinger was lying in the road moaning and Horne kicked him again. Minutes later, a car hit Basinger while he was still in the road. After it was realized that Basinger was dead, defendant proposed to Horne, Lagree, and Earnhardt that the entire truth about what happened not be told, but rather that they describe what happened as follows: Defendant tried to prevent Basinger from cutting his wife but was overpowered and called to Lagree and Horne, whom defendant had seen walking up the road, for help; when Basinger saw the men coming, he ran and fell down in the road where he was hit by an automobile. Defendant told this concocted story to the investigating officer when the officer talked to defendant about the incident.

"[T]here must be substantial evidence of all material elements of the crime charged to withstand the motion to dismiss." *State v. Murphy*, 49 N.C. App. 443, 444, 271 S.E. 2d 573,

574 (1980). The essential elements of accessory after the fact of voluntary manslaughter are as follows: (1) that the principal felon had actually committed the felony of voluntary manslaughter; (2) that the accused knew that voluntary manslaughter had been committed by the principal felon; and (3) that the accused assisted the principal felon in his efforts to avoid detection, arrest, or punishment. *See State v. Overman,* 284 N.C. 335, 200 S.E. 2d 604 (1973); *State v. Williams,* 229 N.C. 348, 49 S.E. 2d 617 (1948). Assuming arguendo that the State presented evidence of elements (1) and (3), *supra,* attention must be directed to defendant's argument that there was no evidence that he knew voluntary manslaughter had been committed.

" 'Proximate cause is an element of . . . manslaughter.' *State v. Sherrill,* 28 N.C. App. 311, 313, 220 S.E. 2d 822, 824 (1976)." *State v. Holsclaw,* 42 N.C. App. 696, 699, 257 S.E. 2d 650, 652, *disc. rev. denied and appeal dismissed,* 298 N.C. 571, 261 S.E. 2d 126 (1979). For a person to be guilty of voluntary manslaughter, it is necessary that his acts "be a real cause, a cause without which the decedent's death would not have occurred." *State v. Holsclaw, supra* at 699, 257 S.E. 2d at 652. Hence, for the State to present the requisite evidence that defendant in the present case knew that Horne or Lagree had committed voluntary manslaughter, there would have to have been evidence that defendant knew that Horne or Lagree had committed acts without which Basinger's death would not have occurred. At the most, however, the evidence disclosed by the record tends to show that defendant's *knowledge* extended only to the following facts: (1) that Horne and Lagree fought with Basinger, (2) that Basinger somehow ended up on or near the road, and (3) that Basinger was struck and killed by an automobile. There is absolutely no evidence that defendant witnessed or would otherwise know how Basinger got in the road, much less that defendant knew that Horne or Lagree committed acts without which the death would not have occurred. There is no evidence that defendant knew that Horne or Lagree positioned Basinger onto the road, or that he knew that they assaulted Basinger while he was on or near the road. For all the evidence tends to show , defendant could just have easily believed that Basinger volitionally placed himself in the road, rather than believing that his being there owed to Lagree's or Horne's violence. The record tends to show only that when the second

fight between decedent and Lagree and Horne started, defendant "was standing in the yard." This evidence is insufficient to satisfy the requirement that there be evidence that defendant knew that Lagree or Horne committed acts without which Basinger's death would not have occurred, and hence, was insufficient to show that defendant knew that any manslaughter had been committed by anyone.

I feel compelled to point out that the majority dismisses defendant's contention that he did not know that Horne or Lagree had committed voluntary manslaughter by stating that there was evidence that "defendant knew . . . that Basinger was left very near to or on the road," and "that defendant knew a felony had been committed." I have searched the record without success to discover such tesitmony; moreover, when the evidence is considered in the light most favorable to the State, it is insufficient to raise an inference of such a fact. The burden was on the State to offer evidence of every essential element of the crime charged. Obviously, the State could prove what defendant knew only by circumstantial evidence which would permit the jury to infer knowledge upon the part of defendant Keller. The State offered evidence tending to show only that defendant was present and that he witnessed the first fight between Horne, Lagree, and Basinger, at or very near his house. It was late at night and dark, and the evidence does not disclose that defendant saw or could have seen what occurred on or near the road. In my opinion, the trial judge erred in not granting defendant's timely motion to dismiss.

Aside from the trial court's error in failing to grant the motion to dismiss, the court also committed prejudicial error when it instructed the jury that it could find defendant guilty if the State satisfied the jury beyond a reasonable doubt that defendant knew that Horne or Lagree "*could* have committed the crime of voluntary manslaughter." [Emphasis added.] This erroneous instruction, considering all of the circumstances of the case, is too prejudicial to be hidden by the familiar rule that the charge must be considered  contextually as a whole, for when the charge is considered contextually as a whole, the error becomes, in my opinion, much more prejudicial than when considered in isolation. In my opinion, the instruction dealing with the element of defendant's knowledge that voluntary manslaughter had been committed fails

to satisfy the requirement that the judge must declare and explain the law arising on the evidence in the case.

In my opinion, the evidence is insufficient to show that Lagree committed voluntary manslaughter. Even though Lagree was allowed to testify that he had pleaded guilty to voluntary manslaughter, in my opinion, the trial court erred in instructing the jury that it could find defendant guilty of accessory after the fact of voluntary manslaughter if, among other things, it found that Horne or Lagree committed voluntary manslaughter. This error was compounded when the trial court failed to instruct the jury not to consider the evidence that Lagree had pleaded guilty to voluntary manslaughter in determining whether voluntary manslaughter had in fact been committed.

I vote to reverse.