STATE v. SCHIRO

[219 N.C. App. 105 (2012)]

_____

STATE OF NORTH CAROLINA v. PERRY ROSS SCHIRO

·   No. COA11-1092

(Filed 21 February 2012)

**1. Search and Seizure—motion to suppress—gun—vehicle search—consent—contraband in car panels**
    The trial court did not err in an accessory after the fact to first-degree murder case by denying defendant's motion to suppress the evidence seized from his vehicle, including a gun. A reasonable person would not have considered defendant's statements that the officers were "tearing up" his car to be an unequivocal revocation of his consent. Further, it was reasonable for a detective to believe contraband could have been hidden behind the car panels after having found marijuana and a stolen license plate in the front section of the vehicle.

**2. Accomplices and Accessories—accessory after the fact to first-degree murder—motion to dismiss—sufficiency of evidence—knowledge that gun in vehicle used in murder**
    The trial court did not err by denying defendant's motion to dismiss the charge of accessory after the fact to first-degree murder based on alleged insufficiency of the evidence that defendant knew the gun found in his vehicle had been used in a murder.

STATE v. SCHIRO

[219 N.C. App. 105 (2012)]

The totality of the evidence gave rise to a reasonable inference that defendant knew precisely what had taken place.

**3. Evidence—prior crimes or bad acts—other thefts and break-ins—corroboration—motive—opportunity—intent—knowledge**

The trial court did not err in an accessory after the fact to first-degree murder case by admitting evidence of other thefts and break-ins, including alleged crimes committed after the time of the charged offense. The evidence was admissible to corroborate the testimony of several other witnesses and was relevant to show defendant's motive, opportunity, intent, and knowledge because the shooter in the first-degree murder case had incriminating evidence against defendant in having been involved in a break-in.

**4. Constitutional Law—right to unanimous verdict—jury instruction—failure to distinguish between two murder theories**

The trial court did not err in an accessory after the fact to first-degree murder case by instructing the jury that it was immaterial that the verdict sheet did not distinguish between the two murder theories of the underlying felony even though defendant contended that it allowed the jury to return a non-unanimous verdict. The indictment stated the "felony of murder" and not the "felony murder rule." Further, it would not have affected the jury unanimously finding defendant guilty of knowingly and willingly assisting the shooter in attempting to escape detection and/or arrest by hiding the firearm.

Appeal by defendant from judgment entered 14 January 2011 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 10 January 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Lars F. Nance, for the State.*

*M. Alexander Charns for defendant appellant.*

McCULLOUGH, Judge.

Perry Ross Schiro ("defendant") appeals from his conviction of accessory after the fact to first-degree murder for attempting to hide the murder weapon. We find no error.

## I. Background

On the morning of Friday, 21 September 2007, in Carthage, North Carolina, Michael Graham Currie and Sherrod Harrison broke into the home of Emily Haddock, who was home sick from school. Currie proceeded to shoot Haddock twice in the head with a .22 caliber handgun, resulting in her death. Defendant, Currie, Harrison, Ryan White, and Van Roger Smith, Jr., were all initially charged with first-degree murder. Defendant's charge for first-degree murder was dropped a few days before trial. Currie ultimately escaped being tried for capital murder by confessing and agreeing to testify against defendant. Currie, however, did receive a sentence of life without parole. Currie gave two statements to police on 22 October 2007, but in neither statement did he tell police anything about conveying to defendant that the gun had been used in a murder. Currie allegedly did not alert authorities to having told defendant about the gun until he began discussing his plea bargain with the district attorney. Furthermore, in a 26 June 2009 letter to the district attorney, Currie falsely claimed defendant was the one "who broke in and shot and killed Emily Haddock." However, Currie admitted to the fallacy at trial. Defendant did not testify at trial, but he had previously provided law enforcement with a signed statement.

Currie obtained the murder weapon during a 20 September 2007 break-in of David Ball's home with Harrison, where they also stole other goods. The gun had a distinct look to it; mainly that it had a gold trigger. After the shooting, Currie held onto the gun, but then gave it to Harrison. Not much later he got the gun back from Harrison and gave it to White, telling him that he could do "[w]hatever he wanted" with it. Prior to giving the gun to White, though, Currie had been handling it in front of defendant and others while wearing white gloves, which they found to be strange. Defendant and Currie stayed in a hotel in Spring Lake, North Carolina, over the weekend. While there Currie called White and told him to give the gun to defendant.

Defendant went by White's house to pick up the gun and subsequently shot the gun once inside of a Wendy's bag. Defendant then returned to the hotel with the gun. Currie testified that while he and defendant were in the hotel room he told defendant "where the gun was from" and at some point before they were locked up "that Sherrod [Harrison] did that shooting." Furthermore, he testified that he "told [defendant] the next night at the hotel—Sunday night I told him what happened. I told him me and Sherrod were involved and Ryan had the gun." Defendant also learned at some point before being

arrested that a Moore County detective was looking for Currie. Currie had told defendant to toss the gun somewhere Currie could find it, so Currie could get rid of it.

Defendant left the hotel early Monday morning with the gun in a Nike bag. At some point that morning, defendant went by Jamel Allen's house where he put the gun in a sock and hid it in the trunk of his car. He then went to eat with some friends where they discussed needing to stay away from Currie because he was acting weird and wearing white gloves. He stated that had he known at the time that Haddock had been shot, he would have thought Currie was involved in the shooting. Soon thereafter, he and White got in the car to ride around looking for Currie, but they could not find him and thus returned to White's house. About five minutes later, the Harnett County Sheriff's Office pulled up and started questioning defendant about his car and Currie's whereabouts. Detective Lieutenant Joe Webb asked defendant for the keys to his car, so defendant told his little brother to give them to Lieutenant Webb. Lieutenant Webb and Detective Justin Toler then opened defendant's trunk to find the gun hidden in the wheel well.

The trial court held a pretrial hearing regarding defendant's motion to suppress the evidence seized from the car. Conflicting evidence was presented regarding the consent necessary to search the vehicle. Detective Toler testified that the search was based on consent, but his report stated it was incident to arrest. Upon hearing all the evidence, the trial court denied defendant's motion. The trial court entered oral findings of fact and conclusions of law.

In summary, the trial court found that upon determining that the license plate on defendant's car was stolen, officers placed defendant under arrest and Lieutenant Webb accompanied defendant to the rear of defendant's car. Detective Toler searched the driver's side of the car where he found a marijuana bud under the seat. He continued to search the backseat where he found a vanity license plate containing the words "HOTT CHIC," which belonged to a stolen Lexus found on 24 September 2007, after being wrecked and burned. Lieutenant Webb asked defendant for consent to search the rest of his vehicle, to which defendant acquiesced. Another patrol car arrived and defendant was placed in the passenger seat, about 10-15 feet away from the trunk of his car. Lieutenant Webb obtained the keys and opened defendant's trunk to search it. While authorities were searching his vehicle, defendant complained to Lieutenant Darren Ritter, who was sitting in the patrol car with defendant, that they were "tearing up"

his car. Both rear quarter panels of the trunk were fitted with carpet/cardboard type interior trim, which were loose. Detective Toler found the gun behind the right rear quarter panel. Defendant was within range to verbally withdraw consent. Defendant told Lieutenant Ritter that he was a convicted felon, that his fingerprints should not be on the gun, and that he did not know anything about the gun. Lieutenant Ritter testified that defendant was visibly sweating and shaking.

The trial court found that the search of the driver's area of the vehicle was lawful subsequent to defendant's arrest. Additionally, the search of the interior was lawful after finding the marijuana and the search of the trunk was based on voluntary consent. Furthermore, the search of the entire vehicle was justified based on the interest of seeking evidence of contraband and crime after finding the license plate from the stolen car along with marijuana.

Moreover, at trial, the State presented evidence that defendant had been involved in the theft of the Lexus connected to the license plate "HOTT CHIC." Olivia Marie Elliott-Priest, a friend of Currie and defendant, testified that she had seen defendant driving around in a white Lexus, which she had never seen him in. Defendant usually drove a green Cadillac. She also testified to defendant and Currie having arrived at her house earlier in the week late at night, after having wrecked the Lexus about two minutes away. White had then picked defendant and Currie up in defendant's Cadillac.

Another issue arose at trial regarding the admission of evidence and testimony pertaining to defendant's involvement in the robbery of David Wayne Oakley's house. Defendant filed a motion *in limine* to prevent mention of these details. The trial court initially sustained an objection to the admission of the evidence due to hearsay, but eventually let the evidence in based on its corroborating other testimony and showing the chain of circumstances of the weekend. The robbery included the taking of nearly a dozen guns and over one thousand rounds of ammunition. Mr. Oakley's neighbor, John Vincent Gallant, III, testified to having seen defendant outside Mr. Oakley's house and telling him to leave. Major Jeffrey Huber testified that he found a rifle and a pair of black bootie socks in the area where Mr. Gallant had seen defendant.

Defendant pled not guilty to the charges, but a jury found him guilty on 3 January 2011. The trial court sentenced defendant to 116 to 149 months in prison. Defendant appeals.

## II. Analysis

### A. Motion to Suppress

[1] Defendant raises four issues on appeal with the first being that the trial court erred in denying his motion to suppress the evidence seized from his vehicle. Defendant contends the gun obtained during the search of his vehicle was the result of an illegal search and seizure. For the following reasons, we disagree.

When reviewing an appeal from the denial of a motion to suppress, the findings of fact are binding if supported by competent evidence and the conclusions of law are reviewed *de novo*. *State v. Barnhill*, 166 N.C. App. 228, 230-31, 601 S.E.2d 215, 217 (2004). The State has the burden of showing the constitutionality of a search. *State v. Cooke*, 306 N.C. 132, 136, 291 S.E.2d 618, 620 (1982). Furthermore, the review of a search should be for constitutional errors, which the State has the burden of proving are "harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2011).

Defendant first argues that warrantless searches are presumed to be unconstitutional. In arguing so, defendant notes that "[a] search and seizure ' "conducted outside the judicial process, without prior approval by a judge or magistrate, [is] *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." ' " *State v. Summey*, 150 N.C. App. 662, 666, 564 S.E.2d 624, 627 (2002) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372, 124 L. Ed. 2d 334, 343-44 (1993) (citations omitted)). Here, authorities did not obtain a search warrant, court order, written waiver, or acknowledgment to search defendant's vehicle. However, an officer may conduct a search and seizure based on consent. N.C. Gen. Stat. § 15A-221(a) (2011). Consent refers to "a statement to the officer, made voluntarily and in accordance with the requirements of G.S. 15A-222, giving the officer permission to make a search." N.C. Gen. Stat. § 15A-221(b). Moreover, "consent . . . must be freely and intelligently given, without coercion, duress or fraud, and the burden is upon the State to prove that it was so, the presumption being against the waiver of fundamental constitutional rights." *State v. Vestal*, 278 N.C. 561, 578-79, 180 S.E.2d 755, 767 (1971).

In the case at hand, officers testified to receiving consent from defendant to search his vehicle. Defendant even showed officers which key opened the trunk of his car. Defendant, alternatively, contends he revoked his consent while sitting, arrested, in a nearby patrol car when he "said several times, 'They're—man, they're tearing

up my trunk.' " Defendant correctly notes that a person may withdraw his or her consent to a search. *State v. Hagin*, 203 N.C. App. 561, 564, 691 S.E.2d 429, 433, *disc. review denied*, 364 N.C. 438, 702 S.E.2d 500 (2010). "The scope of a valid consent search is measured against a standard of objective reasonableness where the court asks 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?' " *Id.* at 564, 691 S.E.2d at 432 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991)). A reasonable person would not have considered defendant's statements that the officers were "tearing up" his car to be an unequivocal revocation of his consent. Similarly, in *State v. Morocco*, 99 N.C. App. 421, 430, 393 S.E.2d 545, 550 (1990), our Court held that the trial court did not err in determining that the defendant did not revoke his consent to search his vehicle when he made the ambiguous statement that a tote bag found in his car had nude photographs of his wife. Had defendant, in the case at bar, desired to revoke his consent he should have made it in a clearer statement that a reasonable person would have considered to be a revocation.

Defendant also argues the trial court erred in failing to note that law enforcement records stated that the search was incident to arrest, and at the same time failing to note that the search was based upon consent. Defendant contends the search was not allowed as incident to an arrest, pursuant to *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485 (2009). Furthermore, in *Gant* the Court set out a two-prong test under which "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351, 173 L. Ed. 2d at 501. We agree that the search of defendant's trunk was not valid as incident to arrest, but we do not think the trial court erred in failing to address law enforcement's noting that the search was incident to arrest. The trial court thoroughly addressed the motion to suppress and determined that the search was valid based on defendant's consent and lack of revocation.

Finally, defendant claims the officers' search of his trunk was excessive in taking off the rear quarter panels. Defendant argues his case is similar to *State v. Johnson*, 177 N.C. App. 122, 627 S.E.2d 488, *disc. review allowed, vacated and remanded*, 360 N.C. 541, 634 S.E.2d 889 (2006), where "a plastic wall panel was removed by a law enforcement officer from the interior of defendant's van, thereby

facilitating discovery of the cocaine. '[A]n individual consenting to a vehicle search should expect that search to be thorough[; however,] he need not anticipate that the search will involve the destruction of his vehicle, its parts or contents.' " *Id.* at 125, 627 S.E.2d at 490-91 (citations omitted) (quoting *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir. 1990)). We, however, believe defendant's case can be distinguished in that here the trial court found "that both the left and right quarter panels of the interior of the trunk were fitted with carpet/cardboard type interior trim" and that they "were loose." Additionally, the trial court found that "Detective Toler was easily able to pull back the carpet/cardboard type trim . . . covering the right rear quarter panel where he observed what appeared to be a sock with a pistol handle protruding from the sock." In *Johnson*, the search of the van appears to be much more invasive than the one in the case at hand. *See id.* at 123-24, 627 S.E.2d at 489-90. There, the officers had to pull back multiple glued down side panels of the van, while in the case at hand Detective Toler merely had to pull back a loose carpet/cardboard panel. *See id.* We do not believe Detective Toler's actions amount to the destruction present in *Johnson. See id.* Furthermore, it was reasonable for Detective Toler to believe contraband could be hidden behind the panels after having found marijuana and a stolen license plate in the front section of the vehicle. Consequently, the trial court did not err in denying defendant's motion to suppress, as it was based on voluntary consent given by defendant.

B.  Motion to Dismiss

[2] Defendant next contends the trial court erred in denying his motion to dismiss based on insufficiency of the evidence. Specifically, defendant argues the State did not present sufficient evidence, that defendant knew the gun found in his vehicle had been used in a murder, for him to be convicted as an accessory after the fact to first-degree murder. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of

the defendant as the perpetrator of it, the motion should be allowed." *Id.* The evidence is viewed in the light most favorable to the State. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

> In order to prove a person was an accessory after the fact under G.S. 14-7 [] three essential elements must be shown: (1) a felony was committed; (2) the accused knew that the person he received, relieved or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felon personally.

*State v. Earnhardt*, 307 N.C. 62, 68, 296 S.E.2d 649, 653 (1982).

Defendant argues all the evidence presented by the State merely amounts to speculation that defendant knew the gun was used in Emily Haddock's murder and is not substantial evidence of the third element of the offense. First, defendant testified and put in his statement that he thought Haddock had been beaten to death, not shot. He further stated he told friends that he would kill whoever beat Haddock to death because he had a sister of a similar age. Defendant also notes that Currie's testimony was based on a plea bargain and was conflicting in certain areas. Defendant did not destroy the gun and was cooperative with law enforcement. Defendant admitted to having fired the gun in a Wendy's bag, which he argues is not something a felon would do if he knew the gun was a murder weapon.

The State, on the other hand, contends there is substantial direct evidence through Currie and defendant's statements for the jury to find that defendant knew the gun had been used in a murder. As mentioned above, Currie testified to having told defendant that the gun was used in Haddock's murder sometime before they were arrested. He testified that it could have been while they were in the hotel together over the weekend. Detective Toler found the gun in the trunk of defendant's car where defendant had hidden it in a sock in the wheel well. "It is not necessary that the aid be effective to enable the felon to escape all or part of his punishment." *State v. Martin*, 30 N.C. App. 166, 169, 226 S.E.2d 682, 684 (1976) (internal quotation marks and citation omitted). Defendant was not successful in helping Currie escape punishment, but he did knowingly aid Currie by hiding the murder weapon. They even discussed Currie getting the gun back, so he could properly dispose of it. Defendant had seen Currie handling the gun over the weekend with white gloves on. Consequently, "[t]he totality of the evidence . . . is such to give rise to a *reasonable inference* that defendant knew precisely what had taken place."

*Earnhardt,* 307 N.C. at 68, 296 S.E.2d at 653. The trial court did not err in denying defendant's motion to dismiss as the evidence was sufficient to constitute more than speculation and to be presented to the jury.

C. Admission of Other Crimes

**[3]** Defendant's third argument on appeal is that the trial court erred in admitting evidence of other thefts and break-ins, including alleged crimes committed after the time of the charged offense. We disagree.

Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey,* 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990). Additionally, "Rule 404(b) . . . allows for the admission of prior bad acts to show a defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.' " *State v. Renfro,* 174 N.C. App. 402, 405, 621 S.E.2d 221, 223 (2005) (quoting N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003)), *aff'd,* 360 N.C. 395, 627 S.E.2d 463 (2006).

Defendant filed a motion *in limine* to preclude the mention of any prior bad acts because he believed the State's use of the prior bad acts would be for the purpose of showing his bad character. The trial court did not specifically address defendant's motion prior to trial, but dealt with issues pertaining to prior bad acts as they came up and defendant objected. Defendant objected to two specific instances with the first being the State's questioning of Officer Toler regarding the breaking in of David Oakley's house on the Saturday night after Haddock's death. In the situation in question, some guns and ammunition were stolen from Mr. Oakley's house and a gun, along with two black socks and a tire tool, were found outside of his house. The State wanted Detective Toler to testify regarding what was found outside of Mr. Oakley's house. However, Detective Toler was not the officer that found the evidence outside of Mr. Oakley's home, so the trial court sustained defendant's objection to Detective Toler testifying regarding this evidence. Consequently, this testimony and evidence does not appear to raise an issue.

Nonetheless, an issue regarding the same evidence came up the next day when the State presented John Gallant, Mr. Oakley's neighbor, to testify about having seen defendant outside Mr. Oakley's house where the gun, socks, and tire tool were found. At this point,

defendant objected to the admission of this testimony based on it not falling under an exception to Rule 404(b). The State argued that the evidence should be admitted to show defendant's opportunities to gain knowledge about Currie's use of the gun. The State had already presented evidence of defendant's interaction Friday night with Currie, in which they wrecked the stolen Lexus and burned it. The State desired to present evidence of the break-in of Mr. Oakley's house to show that the two were together on Saturday, and then also present evidence that they were together Sunday night for a full chain of events of the weekend.

Evidence of prior bad acts may be admitted for corroboration. *See State v. Alston*, 80 N.C. App. 540, 543, 342 S.E.2d 573, 575 (1986). Moreover, the same evidence may be admitted "to establish the context or chain of circumstances of a crime[.]" *See State v. Agee*, 326 N.C. 542, 547, 391 S.E.2d 171, 174 (1990). The State argues the evidence in question was admissible to corroborate the testimony of several other witnesses who testified regarding defendant and Currie's actions on Saturday night. The State also contends the evidence was relevant to show defendant's motive, opportunity, intent, and knowledge; specifically, that it gave defendant motive to aid Currie in hiding the murder weapon because Currie now had incriminating evidence against defendant in having been involved in the break-in of Mr. Oakley's house. We believe the trial court properly admitted Mr. Gallant's testimony for the purposes argued by the State and, additionally, any unfair prejudice was outweighed by the evidence's probative value. Thus, defendant's argument is without merit.

D.  Jury Instructions

**[4]** Defendant's final argument is that the trial court erred by instructing the jury that it was immaterial that the verdict sheet did not distinguish between the two murder theories of the underlying felony. Defendant contends the trial court's instructions allowed the jury to return a non-unanimous verdict. We disagree.

"A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires[.]" N.C.R. App. P. 10(a)(2) (2011). Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error occurs when the error is " 'so basic, so prejudicial, so lacking in its

elements that justice cannot have been done[.]' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

Defendant claims the trial court erred by instructing the jury that it could convict defendant "either on the basis of malice, premeditation and deliberation and/or the felony murder rule" even though the indictment only alleged "the felony murder rule." However, a closer reading of the indictment shows that it actually states the "felony of murder" and not "felony murder rule." The indictment correctly cites to N.C. Gen. Stat. § 14-17, which describes the crime of murder, a felony. The underlying felony "need not be set out as fully and specifically as would be required in an indictment for the actual commission of that felony. It is enough to state the offense generally and to designate it by name." *State v. Saults*, 294 N.C. 722, 725, 242 S.E.2d 801, 804 (1978) (internal quotation marks and citation omitted). Here, the indictment stated the underlying felony as "the felony of murder" and cited to the proper statute for the charge of murder. While this may not have been the best wording of the indictment, we do not believe it specified the felony murder rule. Consequently, the trial court did not err in instructing the jury that Currie could be found guilty "either on the basis of malice, premeditation and deliberation and/or the felony murder rule." That would not affect the jury unanimously finding defendant guilty of knowingly and willingly assisting Currie in attempting to escape detection and/or arrest by hiding the firearm. Consequently, the trial court did not err in its instructions to the jury.

## III. Conclusion

Accordingly, we find no error on behalf of the trial court. The trial court did not err in denying defendant's motions to suppress and dismiss; in allowing the admission of testimony regarding the break-in of Mr. Oakley's home; and in instructing the jury on the various theories of murder for which Currie could be convicted.

No error.

Judges HUNTER (Robert C.) and THIGPEN concur.