**STATE v. SURRETT**

[217 N.C. App. 89 (2011)]

———————

STATE OF NORTH CAROLINA v. THOMAS JAY ALLEN SURRETT

No. COA11-428

(Filed 15 November 2011)

**1. Burglary and Unlawful Breaking or Entering—instructions—disjunctive—theories of underlying offense**

The trial court did not err by giving disjunctive instructions in a prosecution for second-degree burglary allowing a conviction under the theories of accessory before the fact, aiding and abetting, or acting in concert. Two of the instructions required defendant's presence for conviction and one required that he not be present,

but all were merely different methods for the State to prove the underlying offense of second-degree burglary.

**2. Criminal Law—defenses—voluntary intoxication—evidence not sufficient**

There was no plain error in the trial court's failure to instruct the jury on voluntary intoxication in a prosecution for second-degree burglary where neither party presented evidence regarding crack cocaine's effect on defendant's mental state.

**3. Accomplices and Accessories—instructions—accessory before the fact—not a separate offense**

The trial court did not err in a second-degree burglary prosecution in its instruction on accessory before the fact. Although defendant argued that the legislature fully abolished the theory of accessory before the fact through the enactment of N.C.G.S. § 14-5.2, that statute merely abolished the distinction between an accessory before the fact and a principal, so that a defendant may not be convicted as both an accessory before the fact and as a principal. In this case, the jury merely had the opportunity to find defendant guilty of second-degree burglary using the theory of accessory before the fact; he was not convicted of a separate offense of accessory before the fact.

**4. Accomplices and Accessories—accessory after the fact— arrest of judgment**

The trial court erred in a second-degree murder prosecution by not arresting judgment for defendant's conviction of accessory after the fact because he could not be both an accessory and a principal.

**5. Firearms and Other Weapons—possession of two stolen firearms—one count**

The trial court erred by convicting defendant of two counts of possession of a stolen firearm where defendant possessed two separate firearms. *State v. Boykin*, 78 N.C. App. 572, was distinguished.

Appeal by defendant from judgment entered 3 November 2010 by Judge James U. Downs in Haywood County Superior Court. Heard in the Court of Appeals 12 October 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Charles G. Whitehead, for the State.*

*Michael E. Casterline for defendant appellant.*

McCULLOUGH, Judge.

Thomas Jay Allen Lewis Surrett ("defendant") appeals his convictions of second-degree burglary, conspiracy to commit second-degree burglary, accessory after the fact to second-degree burglary, felonious possession of stolen property, and two counts of possession of stolen firearms. For the following reasons, we find no error as to the convictions of second-degree burglary, conspiracy to commit second-degree burglary, felonious possession of stolen property, and one count of possession of stolen firearms, but must arrest judgment on the conviction of accessory after the fact and one count of possession of stolen firearms. As a result, we remand for resentencing.

## I. Background

On 16 September 2009, David Forney ("Forney") received news that his grandfather had died. At the time, Forney, along with his fiancé and children, resided in a two-bedroom trailer behind the Meadowlark Motel in Maggie Valley, North Carolina. After receiving the news about his grandfather, Forney took his family to visit relatives in Franklin, North Carolina. During their return to the Meadowlark Motel, Forney and his family stopped by his mother's place near Lake Junaluska.

Defendant and his wife, April, also resided in the Meadowlark Motel with April's three children. They lived in an apartment less than one hundred yards from Forney's trailer. On 16 September 2009, defendant was in his apartment drinking beer, smoking crack cocaine, and using methamphetamine with Andre Logan, Tabitha Jones, Dustin Surrett, and Nathan Hayes. At some point they ran out of crack cocaine and decided to meet with Forney to replenish their supply. The group got into April's car and met Forney near Lake Junaluska. They proceeded to buy crack cocaine from Forney and then returned to the apartment at the Meadowlark Motel. Defendant knew Forney would not be returning to his trailer until later, as he was attending a party near the lake; so defendant directed Dustin and Nathan to break into Forney's trailer and steal any guns or valuable items. Dustin and Nathan agreed.

Around 9:00 p.m., Dustin broke through a back window of Forney's trailer. He then opened the sliding glass door to let in Nathan and Tabitha. Tabitha left soon after entering without removing anything. Dustin and Nathan, however, stole a flat screen television, laptop computer, Playstation 3, cameras, and a gun case containing a .17 caliber and a .22 caliber rifle. They took the items to defendant's apartment where he took possession and decided to move the items to his mother's house in Waynesville, North Carolina. Dustin and Nathan helped load the items into April's truck and April then drove the three men to defendant's mother's house. At his mother's house, the three transferred the items to the trunk of his mother's gold Chrysler, and continued to move the items throughout the night, stopping at various places on occasion to smoke crack.

Sometime between 11:00 p.m. and 1:00 a.m., Forney returned to his apartment to find that it had been burglarized. He immediately called the sheriff's department to report the break-in and theft. Tabitha notified defendant of the police presence at Forney's trailer. Defendant, Dustin, and Nathan proceeded to take the stolen items to the Whispering Pine Motel in Asheville, North Carolina, where defendant rented a room. April returned to the Meadowlark Motel to look after the children.

Around 7:00 a.m., the three went to a friend's apartment in Waynesville where they unloaded the stolen items. Defendant then left with some other acquaintances, taking all the items except for the Playstation 3, which he let Dustin and Nathan keep. Nine days later, on 25 September 2009, law enforcement personnel stopped defendant near the Haywood and Buncombe County line. Defendant was driving his black Dodge Charger, with Kevin Keeny in the passenger seat. Law enforcement officers immediately arrested defendant and took him into custody. Keeny informed Buncombe County Anticrime Unit Officer Scott Hawkins that there were rifles in April's blue Dodge pickup truck outside of a hotel in Haywood County. The information was conveyed to drug agent Mark Mease with the Haywood County Sheriff's office. Mease went to the Days Inn Hotel, where he met April in the parking lot. April granted Mease permission to search her truck and the two rooms she and defendant were renting. The search of the rooms produced a gun case containing the two guns stolen from Forney's trailer. Defendant was charged with second-degree burglary, conspiracy to commit second-degree burglary, accessory after the fact to second-degree burglary, two counts of possession of a stolen firearm, and felonious possession of stolen property. He was also

charged with being an habitual felon to which he pled guilty. At trial, a jury convicted defendant on all counts. The trial court orally consolidated the charges into one count based on defendant's habitual felon status, with a sentence of 168 to 211 months in prison. Defendant appeals.

## II. Analysis

### A. Disjunctive Jury Instructions

[1] Defendant first argues the trial court committed reversible error by instructing the jury on conflicting theories in regard to the burglary charge, which he argues could lead to a non-unanimous jury verdict. Specifically, defendant contends the trial court erred by instructing the jury in a disjunctive form that it could find defendant guilty of second-degree burglary under a theory of accessory before the fact, aiding and abetting, or acting in concert.

"No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24; *see also* N.C. Gen. Stat. § 15A-1237(b) (2009). We review the existence of a unanimous jury verdict *de novo* on appeal and in doing so "we must examine the verdict, the charge, the jury instructions, and the evidence to determine whether any ambiguity as to unanimity has been removed." *State v. Petty*, 132 N.C. App. 453, 461-62, 512 S.E.2d 428, 434 (1999). "Burglary is a common law offense. To warrant a conviction thereof it must be made to appear that there was a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein. That the building was or was not occupied at the time affects the degree." *State v. Mumford*, 227 N.C. 132, 133, 41 S.E.2d 201, 202 (1947); *see also* N.C. Gen. Stat. § 14-51 (2009).

At trial, the court instructed the jury on three legal theories under any of which the jury could find defendant guilty of the crime of second-degree burglary even though defendant did not actually break into Forney's trailer. The trial court first instructed the jury on the theory of acting in concert, explaining that

for a person to be guilty of a crime, it's not necessary that they do all of the []acts necessary to constitute the crime. If two or more persons join in a common purpose to commit second-degree burglary . . . , each of them, if actively or constructively present, is not only guilty of that crime, if the other person commits it, but is also guilty of any other crime committed by the other person in the furtherance or pursuance of the common purpose to commit second-degree burglary[.]

The trial court went on to instruct the jury concerning the theory of aiding and abetting that "[a] person may be guilty of a crime although he personally does not do any of the acts necessary to constitute that crime." The elements for aiding and abetting as given by the trial court are that (1) the second-degree burglary must have been committed by someone else; (2) the defendant reasonably advised, instigated, encouraged, procured and/or aided the other person to commit the crime; and (3) the defendant's actions or his statements caused or contributed to the commission of the crime by that other person or persons. Finally, the trial court instructed the jury on the theory of accessory before the fact explaining that "[a] person who, although not present at the time the crime is committed, nevertheless counsels, procures, commands or knowingly aids another to commit second-degree burglary, . . . is guilty . . . just as if he had been present and personally done all the acts necessary to constitute that crime."

Defendant contends instructing the jury on the three separate theories was fatally ambiguous and could confuse the jury because two of the theories require the presence of defendant during the crime, while accessory before the fact requires defendant not be present during the crime. Defendant argues that the trial court's instructions were disjunctive and created a risk of ambiguity in the jury's verdict because some jurors might have convicted defendant on the theory that he was present during the crime on the basis of acting in concert, while others might have convicted him on the theory that he was not present as an accessory before the fact.

Our Supreme Court has addressed disjunctive instructions under two lines of cases. *See State v. Diaz,* 317 N.C. 545, 346 S.E.2d 488 (1986); *State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990).

> There is a critical difference between the lines of cases represented by *Diaz* and *Hartness.* The former line establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense,* is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The latter line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense,* the requirement of unanimity is satisfied.

*State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991). The jury instructions in the case at hand follow the *Hartness* line of cases in which a disjunctive instruction does not lead to an ambiguous verdict.

In *Diaz*, the trial court instructed the jury to return a guilty verdict if it determined the defendant "knowingly possessed or knowingly transported marijuana." *Diaz*, 317 N.C. at 553, 346 S.E.2d at 494. Our Supreme Court has

> noted that transportation and possession of marijuana "are separate trafficking offenses for which a defendant may be separately convicted and punished" and that by instructing the jury as he did, the trial judge "submitted two possible crimes to the jury." This Court found the instruction to be fatally ambiguous because it was impossible to determine whether all of the jurors found possession, all found transportation, or some found one and some the other.

*Hartness*, 326 N.C. at 564, 391 S.E.2d at 179 (citation omitted).

Alternatively, in *Hartness* the Supreme Court held that

> [e]ven if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of "any immoral, improper, or indecent liberties." Such a finding would be sufficient to establish the first element of the crime charged.

*Id.* at 565, 391 S.E.2d at 179 (quoting N.C. Gen. Stat. § 14-202.1 (1981)). Therefore, "A single wrong [may be] established by a finding of various alternative elements." *Id.* at 566, 391 S.E.2d at 180.

In the case *sub judice*, the trial court instructed the jury as to three alternative theories of guilt under which defendant could be found guilty of second-degree burglary. The separate theories of guilt were not separate offenses, but were merely different methods under which the jury could find defendant guilty of second-degree burglary. All the theories require that defendant have had a common mindset to burglarize the Forneys' residence and also acted in furtherance of the crime. The evidence shows that defendant had the similar intent and desire for the burglary to occur. He ordered and encouraged Nathan and Dustin to commit the burglary. Even if some of the jurors found defendant to be constructively present for the crime under acting in concert or aiding and abetting, while others found him to not

be present under accessory before the fact, the fact remains that the jury as a whole would unanimously find that defendant had the same intent needed to warrant a conviction of second-degree burglary.

Also, whether or not defendant was present during the crime is not "in itself a separate offense." *See Lyons*, 330 N.C. at 302, 412 S.E.2d at 312. Even further, defendant cannot be separately convicted and punished under the three theories because defendant cannot be guilty as a principal and an accessory to the same crime. *See State v. Rowe*, 81 N.C. App. 469, 471-72, 344 S.E.2d 574, 576, *appeal dismissed, disc. review granted in part, decision vacated in part*, 318 N.C. 419, 349 S.E.2d 604 (1986). Therefore, we find no error in the jury instructions on the three separate theories, two requiring defendant's presence and one requiring him to not be present, as they were merely different methods for the State to prove the underlying offense of second-degree burglary.

B.  Failure to Instruct on Defense of Voluntary Intoxication

[2]  In defendant's second argument he contends the trial court committed plain error in failing to instruct the jury on the defense of voluntary intoxication. Defendant did not object to the trial court's failure to give the instruction on the defense of voluntary intoxication. Defendant argues each crime he was charged with has an element of specific intent and his voluntary intoxication would negate this element in each charge. We disagree.

Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1984) (internal quotation marks and citation omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

"Although voluntary intoxication is no excuse for crime, where a specific intent is an essential element of the offense charged, the fact of intoxication may negate the existence of that intent." *State v. Bunn*, 283 N.C. 444, 458, 196 S.E.2d 777, 786 (1973). However, to warrant an instruction on voluntary intoxication,

[t]he evidence must show that at the time of the [crime] the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose . . . . In the absence of such evidence of intoxication to such degree, the court is not required to charge the jury thereon.

*State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978) (citation omitted).

Defendant argues second-degree burglary, possession of stolen goods and firearms, and conspiracy to commit second-degree burglary all involve an element of specific intent which can be negated by the defense of voluntary intoxication. Defendant further contends that generally the burden is on defendant to raise an affirmative defense, but where the defense arises from the State's own evidence, it is not an affirmative defense and the burden is on the State to disprove it. *See State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975). At trial, the State did present evidence that defendant had been smoking crack cocaine throughout the night of 16 September 2009. Nonetheless, the State did not present any evidence regarding the effect smoking crack cocaine had on defendant, specifically his inability to formulate the intent to perform the crimes with which he was charged. "Evidence of mere intoxication . . . is not enough to meet defendant's burden of production." *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988) (Defendant was awarded a new trial because the trial court failed to give instruction on voluntary intoxication, but there the defendant had been found to be "definitely drunk" and "pretty high." The defendant had returned to the party "drunker, wilder and out of control" and was having trouble walking and speaking.).

In the case at hand, the evidence presented by the State of defendant having smoked crack cocaine does not amount to the level of intoxication involved in *Mash*. Neither party presented evidence regarding crack cocaine's effect on defendant's mental state. The evidence shows defendant was fully functional through the night and the next morning as he helped transport the stolen items around Western North Carolina. Based on the lack of evidence showing the effects of smoking crack cocaine on defendant, we find the trial court did not commit plain error in failing to instruct the jury on the defense of voluntary intoxication.

### C. Jury Instruction on Theory of Accessory Before the Fact

**[3]** Defendant next argues the trial court committed plain error by instructing the jury on the theory of accessory before the fact. This is an extension of defendant's first argument contesting the use of the accessory before the fact instruction because it could lead to jury confusion. Defendant maintains that the North Carolina legislature fully abolished the theory of accessory before the fact through the enactment of N.C. Gen. Stat. § 14-5.2 in 1994. We disagree.

As stated above, we review jury instructions not objected to at the trial level for plain error. *See Gregory*, 342 N.C. at 584, 467 S.E.2d at 31. Defendant contends the State used a shotgun strategy to convict him of second-degree burglary by charging him with six distinct offenses arising out of the same burglary. He argues that his conviction of accessory before the fact should be vacated based on N.C. Gen. Stat. § 14-5.2 (2009), which he contends abolished the theory. Defendant, however, misconstrues the statute. The statute in relevant part states: "All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony." N.C.G.S. § 14-5.2. The statute did not abolish the theory of accessory before the fact, but merely abolished the distinction between an accessory before the fact and a principal, meaning that a person who is found guilty as an accessory before the fact should be convicted as a principal to the crime. As a result, a defendant may not be convicted as both an accessory before the fact to a crime and as a principal to the crime. *See Rowe*, 81 N.C. App. at 471-72, 344 S.E.2d at 576. Here, defendant was not convicted of a separate offense of accessory before the fact; instead the jury merely had the opportunity to find defendant guilty of burglary in the second-degree using the theory of accessory before the fact. Therefore, the trial court did not err in its instruction to the jury on the theory of accessory before the fact.

### D. Conviction of Accessory After the Fact

**[4]** Defendant's final argument is that the trial court erred in failing to arrest judgment on his accessory after the fact conviction because defendant cannot be both a principal and an accessory to the same crime. We agree.

We review questions of law under the *de novo* standard of review. *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). When we apply the *de novo* standard of

review, we consider the matter anew and freely substitute our own judgment for that of the lower court. *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999). It is fundamental that accessories and principals to a crime are two distinct categories of participants and therefore one cannot be guilty of the crime under both theories. *See Rowe*, 81 N.C. App. at 471, 344 S.E.2d at 576.

> A principal is one who either alone or in concert with others commits or accomplishes a forbidden criminal act or acts, *State v. Small*, 301 N.C. 407, 272 S.E.2d 128 (1980) ; while an accessory is one who either before the fact counsels, encourages, instigates or procures another to commit a felony—*State v. Sauls*, 291 N.C. 253, 230 S.E.2d 390 (1976), *cert. denied*, 431 U.S. 916, 53 L. Ed. 2d 226, 97 S. Ct. 2178 (1977)—or after a felony is committed knowingly renders assistance to the *felon. State v. Potter*, 221 N.C. 153, 19 S.E.2d 257 (1942).

*Id.* As a result, defendant cannot be a principal and an accessory after the fact to second-degree burglary. Therefore, the trial court erred in failing to arrest judgment for defendant's conviction of accessory after the fact to second-degree burglary.

**[5]** We also note the trial court erred in convicting defendant of two counts of possession of a stolen firearm. While defendant did possess the two separate stolen firearms, we hold that defendant may not be convicted on separate counts for each firearm possessed. *See State v. Boykin*, 78 N.C. App. 572, 575-76, 337 S.E.2d 678, 681 (1985) ("[T]he Legislature . . . did not intend . . . to create a separate unit of prosecution for each firearm stolen nor to allow multiple punishment for the theft of multiple firearms . . . ."). Although *Boykin* construes N.C. Gen. Stat. § 14-72(b)(4), we believe its interpretation of the Legislature's intent applies to charges of possession of stolen firearms under N.C. Gen. Stat. § 71.1. *See* N.C. Gen. Stat. §§ 14-72(b)(4),-71.1 (2009). Consequently, we arrest judgment on one of defendant's convictions of possession of a stolen firearm. We must also remand the judgment for resentencing because the trial court consolidated it with the accessory after the fact and possession of a stolen firearm convictions, which we have now vacated. *See State v. Brown*, 350 N.C. 193, 213, 513 S.E.2d 57, 70 (1999). "[W]e cannot assume that the trial court's consideration of two offenses, as opposed to one, had no affect [sic] on the sentence imposed." *Id.*

COASTAL FED. CREDIT UNION v. FALLS

[217 N.C. App. 100 (2011)]

### III. Conclusion

Based on the foregoing, we find no error on behalf of the trial court in connection with defendant's convictions of second-degree burglary, conspiracy to commit second-degree burglary, possession of stolen goods, and one count of possession of a stolen firearm—Nos. 10CRS000686, 10CRS050601 and 10CRS050603. But, we arrest judgment on defendant's conviction for accessory after the fact and one count of possession of a stolen firearm—Nos. 10CRS000575 and 10CRS050602. Furthermore, we remand for resentencing.

As to Nos. 10CRS000686, 10CRS050601 and 10CRS050603, no error.

As to Nos. 10CRS000575 and 10CRS050602, arrest judgment.

Remand for resentencing.

Judges STEELMAN and ERVIN concur.