An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1269
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.                                    Transylvania County
                                      Nos. 11CRS050972,
JUSTIN DULUS CASE,                         11CRS050979-80,
    Defendant.                             11CRS052101, 12CRS052184,
                                           12CRS050115


Appeal by defendant from Judgments entered on or about 30 May 2013 by Judge Alan Z. Thornburg in Superior Court, Transylvania County. Heard in the Court of Appeals 7 May 2014.

*Attorney General Roy A. Cooper III, by Assistant Attorney General Sherri Horner Lawrence, for the State.*

*Michael E. Casterline, for defendant-appellant.*


STROUD, Judge.


Justin Case ("defendant") appeals from judgments entered after a Transylvania County jury found him guilty of indecent liberties with a child. We find no error.

## I.    Background

On 11 February 2013, defendant was indicted in Transylvania County for taking indecent liberties with a child. Defendant

pled not guilty and proceeded to jury trial on 29 May 2013. At trial the evidence tended to show the following:

On 21 October 2012, Kara and Sam were living together along with Kara's two children—Jada, age 3, and Robby, age 1.[1] Defendant is Sam's uncle and had previously dated Kara's sister. At the time, defendant was 22 years old. Kara and Sam invited defendant over to their house for a cookout. Defendant brought a six-pack of beer with him. Kara and Sam only saw him drink one or two of the beers.[2] Sam and defendant also smoked one "joint" of marijuana that evening.

After dinner, which defendant did not eat, Kara, Sam, defendant, and the children sat down to watch cartoons. Kara and Sam were resting in a recliner, while Jada was on a covered pallet on the floor. Kara, Sam, and the children fell asleep while watching TV. Kara had offered defendant their extra bedroom to sleep in, but by the time they fell asleep, defendant was still awake. He did not sleep in the spare bedroom.

Around 1 or 2 a.m., Kara woke up and saw defendant sitting on the couch. He was leaning over and rubbing Jada—who was still

---

[1] We will refer to all four individuals by pseudonyms to protect their privacy.

[2] At trial, both Kara and Sam testified that defendant had consumed two beers at most, but Sam had previously told an investigating officer that defendant may have consumed a six-pack.

asleep—on her "private areas." Kara started screaming, which woke up Sam. Sam did not see defendant touching Jada, but he did see defendant pull his hand away from her. Kara immediately woke the children and took them into another room. Defendant repeatedly said, "I'm sorry, I'm sorry." When Sam asked him what he was doing, defendant responded, "[I]t was versity. It's versity. I'm sorry. I'm sorry." Sam did not know what defendant meant by "versity." Sam led defendant out of the house, then pushed him off the front porch. Sam threw the four beers that remained of defendant's six-pack at defendant. Defendant left the scene on foot shortly before police arrived.

Defendant decided not to present any evidence in his own defense. He submitted a written request that the trial court include an instruction on voluntary intoxication and submitted a proposed instruction that largely tracked the language of the pattern jury instruction. The trial court refused to give the instruction.

The jury found defendant guilty of indecent liberties with a child. At the time of the conviction, defendant was on probation for a number of prior offenses. The trial court revoked his probation and activated his sentences in those other cases. The various convictions were consolidated into three

judgments—two for the prior offenses and one for the indecent liberties conviction. The court sentenced defendant to 25-39 months imprisonment for the first judgment, a consecutive sentence of 16-29 months imprisonment for the second judgment, and a split sentence for the indecent liberties conviction consisting of 21-35 months imprisonment, suspended for 30 months of supervised probation, with 8 months active imprisonment. Defendant gave notice of appeal in open court.

## II. Voluntary Intoxication

Defendant argues that the trial court erred in refusing to instruct the jury on the defense of voluntary intoxication. We disagree.

Defendant specifically requested an instruction on voluntary intoxication in writing and at the charge conference, but the trial court refused to give the requested instruction. "Properly preserved challenges to the trial court's decisions regarding jury instructions are reviewed *de novo*[] by this Court." *State v. King*, ___ N.C. App. ___, ___, 742 S.E.2d 315, 319 (2013) (citation and quotation marks omitted). "A trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence." *State v. Riley*, 154 N.C. App. 692, 697, 572 S.E.2d 857, 860 (2002)

(citation and quotation marks omitted). It is undisputed that the proposed instruction was a correct statement of law. The only question is whether an instruction on voluntary intoxication was warranted by the evidence.

> The crime of taking indecent liberties with a minor is a specific intent crime. A specific intent crime requires the State to prove that defendant acted willfully or with purpose in committing the offense. . . . Where a crime requires a showing of specific intent, voluntary intoxication may be a defense to the criminal charge.

*State v. Merrell*, 212 N.C. App. 502, 505-06, 713 S.E.2d 77, 79-80 (2011) (citations and quotation marks omitted).

> It is well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he [committed a specific intent crime] after consuming intoxicating beverages or controlled substances. Evidence of mere intoxication is not enough to meet defendant's burden of production. Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming [specific intent]. In absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.

*State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545 (citations and quotation marks omitted), *app. dismissed and disc. rev. denied*, 355 N.C. 497, 564 S.E.2d 51 (2002).

Here, there was not sufficient evidence to warrant an instruction on voluntary intoxication. Defendant only points to two pieces of evidence in support of his argument: (1) his use of a nonsense word, "versity," when confronted by Sam, and (2) the fact that Sam was able to throw him off the porch. These facts do not come close to showing that defendant was so intoxicated that "defendant's mind and reason were so completely . . . overthrown as to render him utterly incapable of forming [specific intent]." *Id.* Although one of the investigating deputies had noted that Sam said that defendant may have consumed a six-pack of beer, Kara and Sam testified that defendant had consumed two beers and smoked one joint of marijuana in the hours preceding his touching of Jada. Both Kara and Sam testified that defendant did not seem impaired. Sam had shared the joint with defendant and testified that he did not feel impaired by it.

In *State v. Baldwin*, the Supreme Court held that the evidence was insufficient to warrant an instruction on voluntary intoxication. 330 N.C. 446, 463, 412 S.E.2d 31, 41 (1992). The

Court concluded that "the evidence presented in this case—that defendant drank 'about five or six' beers and consumed an indeterminate amount of marijuana and cocaine at some time earlier in the day—was insufficient to show that defendant was so intoxicated that he was incapable of forming the intent necessary to commit first-degree premeditated and deliberated murder." *Id.*

Similarly, here, there was evidence that defendant had consumed some beer—at most, six beers—some hours prior to the criminal act and shared one joint. Defendant never testified about the effect of the beer and marijuana on his mental state. *Cf. State v. Surrett*, 217 N.C. App. 89, 97, 719 S.E.2d 120, 126 (2011) (finding no error in a trial court's refusal to give a voluntary intoxication instruction where there was no evidence concerning how the intoxicating substance affected the defendant's mental state). The two witnesses who did testify about the apparent effects of the substances stated that defendant did not appear intoxicated. Evidence that defendant uttered a single nonsense word and was thrown from the porch, even taken in the light most favorable to defendant, does not show that defendant was so intoxicated that he could not form specific intent when he was rubbing Jada.

We conclude that the evidence here was insufficient to warrant an instruction on voluntary intoxication. Therefore, we hold that the trial court did not err in refusing to give defendant's requested instruction.

### III. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in refusing to instruct the jury on voluntary intoxication.

NO ERROR.

Judges STEPHENS and MCCULLOUGH concur.

Report per Rule 30(e).