An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-756

Filed 15 April 2026

Mecklenburg County, Nos. 21CR008505-590; 23CR740983-590; 24CR038306-590; 24CR038307-590; 24CR038314-590; 24CR038315-590; 19CR248915-590

STATE OF NORTH CAROLINA

       v.

CHRISTOPHER CEQUAN CHISHOLM

Appeal by defendant from judgment entered 6 November 2024 by Judge Louis A. Trosch in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 February 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Jason Caccamo, for the State.*
>
> *Phoebe W. Dee for defendant.*

ARROWOOD, Judge.

Christopher C. Chisholm ("defendant") appeals from judgment entered 6 November 2024 upon his conviction of first-degree murder, breaking or entering a motor vehicle, possession of a firearm by a felon, three charges of possession of a stolen firearm, and attaining habitual felon status. For the following reasons, we

affirm defendant's convictions for first-degree murder, breaking or entering a motor vehicle, possession of a firearm by a felon, and attaining habitual felon status. We vacate judgment on one count of possession of a stolen firearm and remand the remaining two counts for resentencing.

## I.    Background

On 20 December 2019, Robert Hopkins encountered two men breaking into his truck. Upon being interrupted, the two men ran back to their own car, a silver Pontiac, and fled the scene. As the men drove away, they struck Mr. Hopkins and killed him. Police chased the suspected vehicle but no arrests were made that day.

On 22 December 2019, three more cars were broken into in the Gastonia area. First, Timothy and Kelly Heafner's truck was broken into while they were at a Golden Corral and several items were stolen from the truck including Mrs. Heafner's Taurus pistol. Second, Mr. Eugene George's car was broken into in a Buffalo Wild Wings parking lot and two firearms were stolen, a Glock and a shotgun. Finally, Maurice McKinnon's car was broken into at a local Compare Foods where Mr. McKinnon worked as a loss prevention officer. Mr. McKinnon viewed the security surveillance footage and provided it to the police.

The surveillance video showed a silver Pontiac and the police suspected it was the same car that was involved in the fatal 20 December hit and run. The police located the vehicle on 22 December 2019. The police tried to get behind the vehicle

and a chase ensued. Eventually, the occupants of the vehicle, including defendant, fled the vehicle and were taken into custody after a foot pursuit. Officers searched the vehicle and recovered three firearms matching the ones stolen in the 22 December 2019 break ins.

Defendant was interviewed by detectives and admitted that he had been subject to electronic monitoring and had cut off the electronic monitoring bracelet ordered by the court. He told police that he broke into Mr. Hopkins' truck and was driving the car that struck and killed him. Defendant also admitted to driving the car during the chase on 22 December 2019. In relation to the 20 December and 22 December 2019 events, defendant was charged with breaking and entering a motor vehicle, three counts of possession of a stolen firearm, possession of a firearm by a felon, and first-degree murder. Defendant was also charged with attaining habitual felon status.

Defendant's charges were joined for trial which commenced on 21 October 2024. The State presented eyewitness testimony that described the 20 December 2019 hit and run and defendant's flight from the scene, 911 calls made by the witnesses to the hit and run, surveillance videos of the hit and run, and testimony from a DNA expert that Mr. Hopkins' DNA was found on the underside of defendant's vehicle. As to the 22 December break ins, the State presented testimony from the investigating officers, surveillance video from Compare Foods, and testimony from the victims describing what was stolen and that it matched the items

found in defendant's vehicle.

The jury found defendant guilty on all charges and moved on to the habitual phase of the proceeding. The State admitted three self-authenticating judgments, two from North Carolina and one from South Carolina. The North Carolina judgments specified that defendant was convicted of a felony but the South Carolina judgment had no indication of the classification of the offense. The State requested and received an instruction from the trial court classifying the South Carolina crime as a felony. The jury determined that defendant had reached habitual felon status and he was sentenced accordingly. At the end of sentencing, defendant gave oral notice of appeal to this Court.

## II.    Discussion

Defendant presents four issues on appeal: 1) whether defendant received ineffective assistance of counsel; 2) whether the trial court erred by failing to dismiss defendant's first-degree murder charge on the felony murder theory; 3) whether the trial court erred by submitting multiple counts of possession of a stolen firearm to the jury; and 4) whether the trial court plainly erred by instructing the jury that one of defendant's prior convictions was for a felony charge. We address each issue in turn.

## A.    Ineffective Assistance of Counsel

Defendant argues that he received ineffective assistance of counsel that was prejudicial to his defense. Specifically, defendant argues that his counsel's performance was deficient because his counsel made no objection to joining

defendant's charges for trial, stipulated to damning 404(b) evidence that could have been opposed to, only renewed his motion to dismiss at the close of all the evidence after being reminded by the trial court, failed to renew his motion to dismiss at the conclusion of the habitual phase of trial, repeatedly heaped praise on the prosecution, made no objection to the State's continuous referral to Mr. Hopkins' death as a murder, and made no objection to the State's request for the trial court to determine necessary facts to establish habitual status. Below, we address defendant's arguments as to his substantive charges and his habitual phase separately.

### 1.    Standard of Review

This Court applies a *de novo* standard of review when assessing ineffective assistance of counsel claims on direct appeal. *State v. Wilson*, 236 N.C. App. 472, 475 (2014).

### 2.    Substantive Charges

Ineffective assistance of counsel claims may be presented on direct appeal or by a motion for appropriate relief. When presented on direct appeal, ineffective assistance of counsel claims "will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166 (2001). In other words, where the record and the trial court's order are sufficient to assess the ineffective assistance of counsel claim, it may be reviewed on direct appeal. *See State v. Oglesby*,

382 N.C. 235, 245 (2022). Claims arising from an attorney's failure to object at trial often do not require further investigation and can be brought and decided on direct appeal. *See Fair*, 354 N.C. at 166, 168; *State v. Turner*, 237 N.C. App. 388, 396 (2014); *State v. Hartley*, 212 N.C. App. 1, 11–12 (2011).

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court established a two-part test for ineffective assistance of counsel that our Supreme Court subsequently adopted in *State v. Braswell*, 312 N.C. 553, 562 (1985). Under that test, the defendant must show that 1) their counsel's performance was deficient and 2) the deficient performance prejudiced the defense. *Braswell*, 312 N.C. at 562. To show deficient performance, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citing *Strickland*, 466 U.S. at 687).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result must be substantial, but the reasonable probability standard requires less than plain error. *State v. Lane*, 271 N.C. App. 307, 314 (2020) (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). If a reviewing court can determine at the outset that the prejudice prong is not met, then the court need not determine whether counsel's performance was actually deficient. *Braswell*, 312 N.C.

at 563.

Here, defendant's claim requires no further investigation, and the record is sufficient to show that the alleged errors of defendant's counsel did not prejudice his defense as to his substantive charges. Accordingly, we can review defendant's claim on direct appeal and decide it on the merits. Furthermore, because defendant fails to show prejudice, we do not determine whether counsel's performance during the substantive phase of the trial was actually deficient.

There was overwhelming evidence of defendant's guilt presented at trial such that there is not a reasonable probability that the result would have been different absent counsel's alleged errors. Defendant argues that counsel's alleged errors were prejudicial because the joinder of defendant's trial introduced evidence of defendant's possession of guns, an "emotional issue," that would otherwise not have been introduced in his murder trial. Additionally, defendant claims that his attorney allowed the introduction of bad character evidence, including that defendant had cut off his electronic monitoring, allowed for Mr. Hopkins' death to be called a "murder," and signaled to the jury that he agreed with the State's assessment of the merits by praising the prosecution. The examples of praise that defendant provides includes defendant's attorney saying he is "fortunate to be working with very gifted lawyers" and that one of the State's witnesses had an impressive resume.

Meanwhile, defendant's convictions of first-degree murder and breaking and entering a motor vehicle were supported by his admission that he broke into Mr.

Hopkins' truck and drove the car that hit and killed him, DNA testing that revealed that Mr. Hopkins' blood was on the underside of defendant's vehicle, witness testimony that his vehicle left the scene at a high rate of speed, and video of the event. Defendant's conviction of possession of a stolen firearm and possession of a firearm by a felon were supported by witness testimony of what was stolen from their cars that matched the firearms found in the trunk of defendant's car after his arrest, and surveillance video of the break-in of Mr. McKinnon's car. Defendant does not argue that any of this evidence was inadmissible or would have been undermined but for his attorney's alleged errors.

Altogether, even excluding the evidence defendant alleges should have been excluded at trial, the State presented ample evidence of defendant's guilt. In light of the overwhelming evidence of defendant's guilt, there is not a reasonable probability that, but for counsel's errors, the jury would not have convicted defendant on any of his substantive charges. Accordingly, defendant has failed to show that his counsel's allegedly deficient performance prejudiced the defense and his ineffective assistance of counsel claim fails.

### 3.    Habitual Phase

Defendant also claims that he received ineffective assistance of counsel when his attorney failed to object to the trial court's jury instruction regarding his South Carolina conviction. During the habitual phase of defendant's trial, the State admitted three self-authenticating judgments, two from North Carolina and one from

South Carolina. The South Carolina judgment listed that defendant had pled guilty to breaking into a motor vehicle in violation of S.C. Code Ann. § 16-13-0160(A)(1) but did not specify that the crime was a felony. The State requested and received an instruction from the court classifying the South Carolina crime as a felony and the jury thereafter determined that defendant had reached habitual felon status.

Defendant argues that under *Erlinger v. United States*, 602 U.S. 821 (2024), which was decided by the United States Supreme Court five months before defendant's trial, the trial court's jury instruction determined a finding of fact that should have been determined by the jury in violation of defendant's right to a jury trial. Defendant asserts that his attorney's failure to object was prejudicial because without the instruction, the State provided insufficient evidence of his prior convictions to support his habitual felon charge. For the following reasons, we hold that the trial judge's jury instruction did not violate defendant's right to a jury trial and accordingly, his attorney's failure to object to the instruction was not deficient performance.

The Sixth Amendment guarantees those accused of a crime the right to a jury trial. *Alleyne v. United States*, 570 U.S. 99, 104 (2013). "This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Id.* (citations omitted). The United States Supreme Court has repeatedly held that this right generally requires that facts that increase a defendant's maximum or minimum penalty be proven beyond a reasonable doubt

and found by a jury, not a judge. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 116 (2013); *Mathis v. United States*, 579 U.S. 500, 511 (2016). For example, in *Apprendi*, the Supreme Court found that a New Jersey hate crime enhancement was unconstitutional where it allowed a judge to impose a higher sentencing range upon the judge's finding by a preponderance of the evidence that the defendant's purpose was to intimidate the victim based on a particular characteristic. 530 U.S. at 490–92. The Court held that because it increased the sentencing range, the issue of the defendant's purpose needed to be proven to and determined by a jury. *Id.*

The Supreme Court recognized an exception to that general rule for prior convictions in *Almendarez-Torres v. United States*, 523 U.S. 224, 243–47 (1998). There, a federal law forbade noncitizens who had once been deported from returning to the United States without special permission and authorized a prison term of up to two years for violating the law. *Almendarez-Torres*, 523 U.S. at 226. The law was accompanied by a sentencing enhancement authorizing a prison term of up to twenty years for any noncitizens violating the law "if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony.' " *Id.* (quoting 8 U.S.C § 1326). The Court found that the sentencing enhancement was not an element of the crime and thus did not need to be listed in an indictment and the State did not have to prove beyond a reasonable doubt that it applied. *Id.* at 235, 239–40. The Court reasoned that recidivism "is a traditional, if not the most traditional, basis for a sentencing

court's increasing an offender's sentence." *Id.* at 243. Thus, with this exception in mind, "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." *Mathis*, 579 U.S. at 510 (citing *Apprendi*, 530 U.S. at 490).

Since *Almendarez-Torres*, the Court has emphasized that the exception is a narrow one and a judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Id.* at 511–12; s*ee also Alleyne*, 570 U.S. at 111 n.1; *Apprendi*, 530 U.S. at 490. *Erlinger* followed that pattern of narrowing *Almendarez-Torres*. *Erlinger*, 602 U.S. at 837–39. There, the law at issue was the Armed Career Criminal Act which "imposes lengthy mandatory prison terms on certain defendants who have previously committed three violent felonies or serious drug offenses on separate occasions." *Id.* at 825. The Court considered "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Id.* Ultimately, the Court held that the question of whether past offenses were committed on separate occasions must be proven to and decided by a jury. *Id.* at 835.

The Court expressly found that the determination of whether past offenses were committed on separate occasions does not fall under the *Almendarez-Torres* exception because such a determination requires more than the identification of the

defendant's "previous convictions and the legal elements required to sustain them." *Id.* at 838–39. The Court stated that determination could be "fact-laden" and require "a qualitative assessment about 'the character and relationship' of the offenses" or "an inquiry into whether the crimes shared 'a common scheme or purpose.'" *Id.* at 834, 841.

Here, defendant was charged with reaching habitual felon status which does increase the sentencing range, thereby implicating the Sixth Amendment right to a jury trial. N.C.G.S. § 14-7.6; *see also State v. Penland*, 89 N.C. App. 350, 351 (1988) ("The only reason for establishing that an accused is an habitual felon is to enhance the punishment which would otherwise be appropriate for the substantive felony which he has allegedly committed while in such a status."). The parties disagree as to whether the classification of an offense is a question of fact, and thus falls under *Erlinger*, or a question of law, in which case it can be determined by a judge. However, we hold that even if the classification of a prior conviction is a question of fact, it falls under the *Almendarez-Torres* exception.

We recognize that *Almendarez-Torres* provides only an exceedingly narrow exception and represents "an exceptional departure" from historic practice. *Apprendi*, 530 U.S. at 487. However, the question of whether defendant's prior conviction was for a felony falls within that exceedingly narrow exception. Under *Almendarez-Torres*, judges can determine "what crime, with what elements, the defendant was convicted of," and the classification of the crime is part of the

determination of "what crime" the defendant was convicted of. Additionally, unlike in *Erlinger*, the determination of whether the South Carolina crime was a felony is not a "fact-laden" inquiry but rather a simple matter of recognizing the classification as laid out in the statute. Notably, all convictions under the South Carolina statute that defendant was convicted of violating are felonies, so determining the classification of defendant's conviction did not involve any analysis of the facts underlying defendant's conviction.

Our determination that the trial judge was constitutionally permitted to instruct the jury that the South Carolina offense was a felony is consistent with this Court's decision and interpretation of the Sixth Amendment in *State v. Hanton*, 175 N.C. App. 250 (2006). There, this Court considered the requirement that any fact that increases the punishment for a crime be submitted to the jury in the context of our state's structured sentencing scheme and the rules for determining a defendant's prior record level under N.C.G.S. § 15A-1340.14(e). *Hanton*, 175 N.C. App. at 251–53. The defendant had been previously convicted of three out-of-state offenses and the trial court's determination that the offenses were similar to certain North Carolina offenses raised the defendants record level, and by extension his sentencing range. *Id.* at 252. We held that "whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that must be determined by the trial court, not the jury." *Id.* at 254.

In *Hanton*, this Court considered the *Almendarez-Torres* exception as it was

described in another United States Supreme Court decision, *Blakely v. Washington*, 542 U.S. 296, 301 (2004). *Hanton*, 175 N.C. App. at 252–55. We reasoned that determining a defendant's prior record is a mixed question of law and fact in which the "fact" is merely the fact of the conviction which can be determined by the trial court consistent with the Sixth Amendment. *Id.* at 254. Overall, we found that the question of whether a conviction under an out-of-state statute is similar to an offense under North Carolina statutes "is so related to a trial court's calculation of a prior record that it is covered by the exception" in *Almendarez-Torres*. *Id.* at 255. Similarly, here, the determination of the classification of the South Carolina offense is part of the overall question of whether the offense qualifies as a "felony offense" under N.C.G.S. § 14-7.1 and is so closely related to determining defendant's prior record that it is covered by the *Almendarez-Torres* exception.

Because the trial judge was constitutionally permitted to determine and instruct the jury that the South Carolina charge was a felony, defendant's counsel did not seriously err by not objecting to the instruction. Accordingly, the counsel's performance was not deficient, and defendant's ineffective assistance of counsel claim as to the habitual phase of his trial also fails.

## B.    Motions to Dismiss

Defendant next argues that the trial court erred by denying his motions to dismiss the first-degree murder charge on the felony murder theory and the duplicative charges of possession of a stolen firearm. We find no reversible error as

to the trial court's denial of defendant's motion to dismiss the first-degree murder charge. However, we find that the trial court did err in sending all three counts of possession of a stolen firearm to the jury. We vacate judgment on one count of possession of a stolen firearm and remand the remaining counts for resentencing.

1.      Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62 (2007) (citations omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98 (1980)). Substantial evidence exists if there "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78 (1980) (citations omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192–93 (1994) (citations omitted).

2.      Felony Murder

Defendant contends that the trial court erred by failing to dismiss his first-degree murder charge on the felony murder theory because there was insufficient

evidence that he committed a predicate felony. However, defendant was convicted of first-degree murder under both the felony murder theory and the premeditation and deliberation theory. Either theory can support his conviction such that even if the trial court erred by failing to dismiss the charge on the felony murder theory, defendant's conviction must stand so long as the premeditation and deliberation theory remains valid. *State v. Grainger*, 367 N.C. 696, 699–700 (2014); *State v. McLemore*, 343 N.C. 240, 249 (1996).

Other than in his ineffective assistance of counsel argument, which we have rejected, defendant does not challenge his conviction of first-degree murder under the premeditation and deliberation theory. Accordingly, defendant's argument that his first-degree murder charge on the felony murder theory should have been dismissed is moot. *See State v. Brewington*, 195 N.C. App. 317, 321 (2009) (dismissing an appeal as moot where defendant was convicted of first-degree murder under both the felony murder theory and the premeditation and deliberation theory but only alleged errors as to the felony murder theory).

### 3.    Possession of a Stolen Firearm

Defendant also contends that there was insufficient evidence to support three charges of possession of a stolen firearm because under *State v. Surrett*, 217 N.C. App. 89, 99 (2011), a defendant may not be charged separate counts for each firearm possessed. Defendant argues that there was only evidence to support a single count of possession of a stolen firearm. While we agree that the counts of possession of a

- 16 -

stolen firearm is not based on the number of firearms possessed, we hold that there was sufficient evidence to support two charges of possession of a stolen firearm. Accordingly, we vacate judgment on one count of possession of a stolen firearm and remand the remaining counts for resentencing.

Defendant was convicted under N.C.G.S. § 14-71.1 which provides that it is a felony to possess stolen property when the possessor knows or has reasonable grounds to believe that the property was stolen. *State v. Wilson*, 203 N.C. App. 547, 554 (2010). Our Supreme Court considered how to determine the proper number of separate charges for the crime of possession of stolen property in *State v. White*, 322 N.C. 770, 778 (1988) *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990). There, the Court explained that "possession . . . is a continuing offense beginning at the time of receipt and continuing until divestment." *White*, 322 N.C. at 778 (quoting *State v. Davis*, 302 N.C. 370, 374 (1981)). Accordingly, "[§ 14-71.1] individuates crimes of possession by the time at which the stolen goods came into the criminal's possession rather than homogenizing all simultaneously possessed stolen items into one possessory offense." *Id.* Applying that rule, our Supreme Court determined that a defendant committed more than one offense of possession where the stolen goods were acquired at different times during a series of break-ins over a six-week period. *Id.*

This Court applied the analysis in *White* in *State v. Phillips*, 172 N.C. App. 143, 145 (2005). There, the defendant and his companions broke into the premises of

Parker Marine and Outdoors and snuck five All-Terrain-Vehicles (ATVs) through a hole they cut in the fence into a nearby wooded area. *Id.* at 144. The defendant then made four separate trips to move the ATVs to two different hiding spots. *Id.* This Court concluded that the break-in constituted one continuous transaction during which the defendant maintained possession of all five ATVs even while making separate trips to transport them. Accordingly, this Court held that the evidence was "sufficient to conclude that the defendant committed only one offense of possession of stolen property, not five." *Id.* at 148.

Similarly, in *Surrett*, the case cited by defendant, this Court held that the trial court erred in convicting the defendant of two counts of possession of a stolen firearm where they were stolen at the same time in the same break-in. *Surrett*, 217 N.C. App. at 92, 99. Thus, "the *number* of stolen items that a defendant possesses does not necessarily dictate the proper number of charges for possession of stolen goods." *Phillips*, 172 N.C. App. at 145. Rather, the number of charges depends on when and under how many separate transactions the items came into the defendant's possession. *See id.*; *White*, 322 N.C. at 778.

In *Phillips*, we analogized the determination of the proper number of possession of stolen goods charges to the proper number of larceny charges which is also based on an analysis of the transaction. *Phillips*, 172 N.C. App. at 146. "A single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place." *State v. Froneberger*,

81 N.C. App. 398, 401 (1986). To support several larceny charges, the State must present sufficient evidence that the larcenies occurred during separate transactions. *Id.* Multiple enterings may still constitute only one continuous transaction, particularly where the enterings occurred in close proximity and in the same general time period. *State v. Marr*, 342 N.C. 607, 613 (1996); *State v. Hargett*, 157 N.C. App. 90, 95–96 (2003), *abrogation on other grounds recognized by State v. Williams*, 215 N.C. App. 412, 425 (2011). However, evidence that the larcenies were from different victims is sufficient to support separate larceny charges. *State v. Greene*, 251 N.C. App. 627, 638 (2017).

Here, evidence presented at trial tended to show that the three stolen firearms were acquired in two break-ins in Gastonia on 22 December 2019. The Taurus pistol was stolen from Ms. Heafner's car and the Glock and shotgun were both stolen from Mr. George's car. The State's evidence that the firearms were stolen from two separate cars and two separate victims is substantial evidence that the firearms were stolen in two separate transactions. Accordingly, under *White* and *Phillips*, the State's evidence was sufficient to support two charges of possession of a stolen firearm. However, because both the Glock and shotgun were stolen from Mr. George's car and the State presented no evidence that they were stolen in separate transactions, there was insufficient evidence to support separate charges for each of those firearms. Therefore, the trial court erred by not dismissing one of the charges of possession of a stolen firearm.

C.     Jury Instructions

Defendant argues that the trial court plainly erred by instructing the jury that defendant's prior conviction in South Carolina was for a felony charge.  We disagree.

Defendant concedes that he did not preserve this issue for review. Unpreserved errors in jury instructions are reviewed for plain error.  *State v. Leopard*, 300 N.C. App. 199, 205 (2025).  "[T]o demonstrate that a trial court committed plain error, the defendant must show 'that a fundamental error occurred at trial.'"  *State v. Maddux*, 371 N.C. 558, 564 (2018) (quoting *State v. Lawrence*, 365 N.C. 506, 518 (2012)).  "To show fundamental error, a defendant 'must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." '"  *Id.* (quoting *Lawrence*, 365 N.C. at 518).

Defendant's argument that the trial court erred by instructing the jury that defendant's prior conviction in South Carolina was for a felony is the same as his argument alleging ineffective assistance of counsel.  For the same reasons we rejected that argument, we hold that the trial court did not commit plain error in its jury instructions.

III.     Conclusion

For the foregoing reasons, we affirm defendant's convictions for first-degree murder, breaking or entering a motor vehicle, possession of a firearm by a felon, and attaining habitual felon status.  We vacate judgment on one count of possession of a

stolen firearm and remand the remaining two counts for resentencing.

AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR RESENTENCING.

Chief Judge DILLON and Judge STADING concur.

Report per Rule 30(e).